(No. 35108.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* STANLEY EUGENE TRANOWSKI, Plaintiff in Error.

*Opinion filed May 18, 1960.—Rehearing denied September 26, 1960.*

12

Dallin H. Oaks, of Chicago, for plaintiff in error.

Grenville Beardsley, Attorney General, of Springfield, and Benjamin S. Adamowski, State's Attorney, of Chicago, (Fred G. Leach, Assistant Attorney General, and Francis X. Riley, and James R. Thompson, Assistant State's Attorneys, of counsel,) for the People.

Mr. Chief Justice House delivered the opinion of the court:

Defendant prosecutes a writ of error to the criminal court of Cook County to review his conviction as an habitual criminal for the crime of armed robbery.

About 6:05 p.m. on November 27, 1948, Raymond Fulton was about to enter the alley leading to the rear of his

home at 6526 Bosworth Avenue in Chicago. He heard footsteps behind him and waited to see if it was a neighbor. The man approaching was a stranger wearing a dark topcoat and hat and holding a nickel-plated gun in his left hand. He made Fulton throw his wallet on the sidewalk, then told him to go on up the alley or be shot. On reaching his home, Fulton reported the incident to the police.

About five minutes later and one block away, Dan Perusitis, a janitor, was entering the alleyway entrance of his building when he heard someone ask for his wallet. On turning, he saw that his assailant had a shiny gun and wore a greenish coat and brown hat. He told the man he didn't have any money and was ordered to "beat it." The robber then ran down the alley.

Another five minutes later and one-half block distant, LeRoy Gurley, his daughter, and a cousin, were walking north on the east side of Bosworth Avenue near the north entrance to Sullivan High School when they heard someone running up behind them. They turned and were confronted by a young man wearing a dark three-quarter length topcoat, dark hat and gloves. He held a shiny revolver in his left hand and as he approached he put his right hand up to cover the lower part of his face. He demanded Gurley's wallet, threatened to shoot them and made Gurley throw his wallet on the sidewalk. After picking up the wallet, the robber ran off in a southwesterly direction. Gurley immediately reported the holdup to the police.

At approximately 6:30 p.m. and two blocks from the Gurley robbery, James Dennehy was nearing the entrance to his apartment when a young man walked up behind him and whispered, "This is a stick-up." The man had a gun in his left hand and held a glove over the lower part of his mouth. He demanded Dennehy's wallet but when Dennehy insisted he had none the robber told him to be on his way. As Dennehy walked toward his apartment entrance, Karl Klaus, a baker, came out of the building and walked up to

the robber, whom Klaus described as wearing a dark coat and hat. The robber stuck a gun up to Klaus' stomach, saying, "Give me your wallet." After taking Klaus' wallet, the robber turned and ran.

About 6:30 or 6:45 p.m., Thomas Manning, aged 13, was near the entrance to the alley behind Ashland Avenue, which is about a block from the place where Klaus and Dennehy were held up. He heard shots in the alley, saw two men struggling and then saw a man wearing an overcoat run down the alley. It was later determined that Egidus F. Radostits was shot and killed in this struggle.

In the meantime, Alex Cohen, a motorcycle patrolman, was at the Rogers Park police station when Gurley, the third person approached, reported he had been held up. The officer began an immediate search of the vicinity and was then notified of the shooting of Radostits in the alley, and went to investigate. Cohen continued his patrolling and about 7:00 p.m. saw a man resembling the description of the robber walking near the corner of Clark and Albion streets. As Cohen dismounted from his motorcycle, the suspect drew a gun and fired several shots at Cohen, then ran down the street and escaped into an alley. Officer Cohen later found a nickel-plated .32 caliber revolver and the four wallets taken from Fulton, Gurley, Klaus and Radostits in the backyard of a residence near the alleyway into which the suspect had escaped. About 10:15 p.m. defendant's overcoat and wallet and a pair of shoes were found in the areaway between 1725 and 1727 Albion Street by one of the cordon of policemen called in to search the area. At 11:30 p.m. defendant, wearing only a shirt and trousers, was apprehended while hiding underneath the rear porch at 1743 Albion Street. He was taken to the Rogers Park police station where he was identified by Gurley and Dennehy as the man who had robbed them. The following day, he was identified from a lineup of similarly dressed men by four of the victims and partly identified by two others.

Defendant was tried under an indictment charging him with the armed robbery of LeRoy Gurley and as having been previously convicted of burglary. At the trial, evidence of the other robberies and the killing of Radostits was admitted over objection of his counsel. He was positively identified at the trial by Gurley, Gurley's daughter, Fulton, and Dennehy, and by the police officers he encountered in the search. Perusitis testified that he was "pretty sure" defendant was the man who had accosted him, and Klaus testified that defendant "resembled" the man who had robbed him.

Defendant, the only witness for the defense, denied taking part in any of the robberies. He testified that he was on parole from a previous conviction for the crime of burglary and on the day of the robberies had planned to attend a movie near the Rogers Park area; that as he was about to enter a restaurant, before going to the movie, he was forced into the back seat of an automobile by a man who threatened him with a nickel-plated gun; that his overcoat, wallet and shoes were taken from him and he was compelled to lie down on the floor while the auto was driven around for a long period of time; that he later lost consciousness and was dumped out of the car but didn't remember hiding under the stairway when apprehended by the police or how he came to be there. Further testimony that he was afflicted with epilepsy was rebutted by the doctor who examined him at the police station after his arrest.

The jury returned a verdict of guilty of armed robbery with a special finding that defendant had previously been convicted of the crime of burglary. Motions for new trial and arrest of judgment were overruled and judgment was entered, sentencing him to life imprisonment. He contends in this appeal that his conviction should be reversed because the trial court admitted evidence of and permitted argument on crimes other than that for which he was tried.

It is the general rule that evidence that another or other crimes were committed by a defendant, wholly independent of and disconnected from the crime for which he is being tried, is not admissible. (*People* v. *Deal,* 357 Ill. 634.) But a corollary of the rule is that evidence, relevant to the main issue, which serves to place a defendant in proximity to the time and place, aids or establishes identity, and tends to prove design, motive or knowledge, is admissible, (*People* v. *Botulinski,* 392 Ill. 212.) Resolution of the conflict between the rule and the corollary depends on whether the evidence of other crimes is so closely connected with the main issue that it tends to prove the accused guilty of the crime for which he is being tried. *People* v. *Lehman,* 5 Ill.2d 337; *People* v. *Eckman,* 380 Ill. 413; *People* v. *Jennings,* 252 Ill. 534; *Lyons* v. *People,* 137 Ill. 602; *Farris* v. *People,* 129 Ill. 521.

In the present case, the defendant claimed that he was innocent of the Gurley robbery for which he was being tried, making it necessary for the State to prove all the elements of that crime beyond a reasonable doubt. In view of his plea of not guilty, the evidence of the other robberies was competent and admissible, since this evidence served to place defendant in the area at the correct time and establish a scheme or design which was strikingly similar to the offense charged in the indictment. This evidence was properly admitted even though when seen by some of the witnesses he was engaged in the commission of other crimes. *People* v. *Jennings,* 252 Ill. 534.

However, the evidence of the Radostits' killing does not fall within any of the recognized exceptions to the rule excluding evidence of other crimes. The only eyewitness to the slaying was unable to identify the killer, so that it can not be said that evidence of the killing in any way tended to prove defendant's presence in the area or a scheme or design similar to the Gurley robbery. We conclude, therefore, that the trial court erred in admitting evidence of the

Radostits' killing. However, it is not the duty of this court to review the record in a criminal case to determine whether or not it is free from error. (*People* v. *Sleezer*, 9 Ill.2d 57; *People* v. *Davis*, 406 Ill. 215; *People* v. *Cardinelli*, 297 Ill. 116.) It is not our policy to reverse a judgment of conviction merely because error has been committed, unless it appears that real justice has been denied or that the verdict of the jury may have resulted from such error. (*People* v. *Cavanaugh*, 13 Ill.2d 491; *People* v. *Susanec*, 398 Ill. 507.) Where the competent evidence shows, beyond all reasonable doubt, that the defendant is guilty in a case where the jury are not the judge of the penalty to be inflicted upon the defendant, error will not ordinarily require reversal of the judgment of conviction. (*People* v. *Guilfoyle*, 321 Ill. 93.) Where it is clear from the record that the jury could not have reasonably found the defendant not guilty, errors in the admission of evidence do not require reversal. *People* v. *Burger*, 259 Ill. 284.

In the present case the jury had nothing to do with fixing defendant's punishment, since a life sentence was mandatory upon conviction under the Habitual Criminal Act. (Ill. Rev. Stat. 1947, chap. 38, par. 602.) The competent evidence in the record establishes defendant's guilt beyond a reasonable doubt. Indeed, the jury could scarcely have arrived at any other verdict. Under these circumstances, the error in the admission of the evidence complained of does not require reversal. (*People* v. *Maurantonio*, 8 Ill.2d 60; *People* v. *Jersky*, 377 Ill. 261.) In view of our holding with respect to this evidence we are of the opinion that no prejudicial error was committed by the prosecuting attorney in commenting on this evidence in his final argument. The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*