(No. 39399.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* ROBERT CAGE, Appellant.

*Opinion filed May 23, 1966.*

GERALD W. GETTY, Public Defender, of Chicago, (JAMES J. DOHERTY, WILLIAM J. MORAN, and FREDERICK F. COHN, Assistant Public Defenders, of counsel,) appointed by the court, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and JAMES ZAGEL, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

On November 9, 1934, following a joint trial by jury, Robert Cage and Edward Smith were found guilty of murdering Charles Harakopas and their punishment fixed at 99 years imprisonment. Subsequent *pro se* writs of error resulted in review of the common law record and affirmance of both convictions by this court and denial of *certiorari* by the Supreme Court of the United States. Thereafter postconviction proceedings before different trial judges resulted in denial of Cage's petition and allowance of a new trial for Smith. The State subsequently *nolled* as to Smith, and he was released. As to Cage, a remarkable procedural tangle ensued. After the Supreme Court of the United States held

indigent defendants were entitled to transcripts (*Griffin* v. *Illinois*, 351 U.S. 12, 100 L. Ed. 891, 76 S. Ct. 585), he requested, in proper time, a transcript of the original trial proceedings. This was denied due to the intervening death of the reporter, and defendant thereafter sought to use the transcript of the original trial which had been introduced as an exhibit in the post-conviction proceedings. It had been lost by the clerk of the criminal court of Cook County. Later a copy was located in the office of the clerk of the Supreme Court of the United States. We thereafter allowed a writ of error, believing that due process requirements prevented application of the 20-year limitation period here since earlier review on the merits had been prevented by loss of the transcript by an agency of the State. The case was then transferred to the Appellate Court for the First District and leave to appeal from its judgment reducing the sentence and affirming the conviction has been allowed.

Little would be accomplished by a detailed statement of the facts which are adequately set forth in the opinion of the appellate court. (58 Ill. App. 2d 262.) While, in our opinion, the appellate court properly rejected defendant's contention that his guilt was not established beyond a reasonable doubt, we believe this conviction must be reversed and the cause remanded for the same reasons which prompted the trial court to award co-defendant Smith a new trial in his 1953 post-conviction proceedings.

While considerable space in the briefs is devoted to argument as to whether the State is estopped from now contending defendant's trial was fair, since a statement by the judge hearing co-defendant Smith's post-conviction proceeding indicated the judge believed the State had conceded the unfairness of the original trial, we need not predicate our reversal thereon.

The basic fault lies in the erroneous admission of prosecution testimony of a prejudicial character, an error called to the attention of the judge hearing Smith's post-conviction

petition, but apparently not considered of constitutional dimension by counsel in Cage's hearing. The murder occurred during robbery of a candy store. In presenting its case the State called four merchants who testified briefly as to their names, addresses, locations of the witnesses' stores and that defendants Cage and Smith and John Myrick had been in these stores together on specific occasions subsequent to the murder. While Myrick was not a defendant in this case he apparently had been arrested in connection with the robberies of the stores operated by the merchant witnesses. Motions to strike this testimony were denied. On cross-examination of defendant Cage, although his direct examination contained no reference to his acquaintanceship, or lack of it, with Smith, the State was permitted, over objection, to inquire whether defendant knew Smith or John Myrick. Cage answered that he had not known them prior to seeing them in the police station. In rebuttal the State again produced three of the four merchants who reiterated their earlier testimony.

Justification for use of this testimony in presenting the State's case is now sought in the argument that it was proper and relevant to show the existence of a conspiracy to rob neighborhood stores and that the evidence demonstrated the continuing nature of the defendant's association and the criminal nature of their purposes. The general rule, of course, is that evidence of commission of other crimes by an accused, in addition to that for which he is on trial, is inadmissible unless its relevancy in placing a defendant in proximity to the time and place, aiding or establishing identity, or tending to prove design, motive or knowledge is so closely connected with the main issue as to justify admission. (*People* v. *Tranowski,* 20 Ill.2d 11, 16, and cases there cited.) It is apparent from the appellate court opinion that the members of that court questioned the propriety of the evidence in chief, but they chose to rest their criticism on the impropriety of the rebuttal testimony of the same

witnesses, viewing *People* v. *Geidras,* 338 Ill. 340, as controlling.

In the context of this case we believe this evidence should have been excluded or stricken on both occasions. During presentation of the State's case there existed no issue regarding Cage's acquaintanceship with Smith or Myrick. If then proper at all, it is so only if it may fairly be said that its probative value in establishing guilt outweighed its prejudicial effect. The State maintains this testimony established a common design or pattern in a conspiracy by Cage, Smith and Myrick to rob stores just at closing time when the greatest accumulation of cash and fewest customers were on hand. These witnesses, however, say nothing about customers or closing times other than fixing the appearances of Cage and the others at late afternoon hours as contrasted with the 1:00 A.M. hour of the candy store robbery and murder. The probative value of this testimony was minimal in establishing any of the elements which would remove it from the general exclusionary rule. Its prejudicial effect seems to us obvious. It was objected to when presented and motions to strike it were made and denied. We believe it should have been excluded. The cases cited by the State as supporting a contrary view without exception involve testimony having far greater probative value than is present here.

The problem as to the rebuttal testimony is somewhat different. The State contends that the clearly improper questions on cross-examination were not objected to by defendant and that the impeaching rebuttal testimony was therefore proper. However, it must be remembered that defense counsel had earlier strenuously objected to introduction of the same testimony without success; to say now that he cannot complain because he did not renew his objections at the time the preliminary questions were asked on cross-examination seems to us unwarranted. While we have normally declined to consider alleged errors where no

objection thereto was made during trial or in the written post-trial motions, we have not hesitated to do so where fundamental fairness so requires. (*People* v. *Sprinkle,* 27 Ill.2d 398, 399.) Such, we believe, is the situation before us, and we accordingly hold the motions to strike the rebuttal testimony should have been allowed.

The appellate court concluded that the improper testimony may have induced the jurors to believe that defendant had been engaged in other crimes. In this it was correct, but we cannot agree with its further holding "that the fact that the jury may have been induced to believe that subsequent crimes were committed by defendant did not effect their verdict as there was sufficient evidence introduced other than the testimony of the store owners, to convict defendant of the offense charged. We also hold, however, that inasmuch as the jurors set the penalty, they might have considered the testimony of the store owners, to the detriment of defendant, and increased his sentence." That court then, in an apparent effort to alleviate the prejudice it conceded might have existed, reduced the 99-year sentence to 70 years. That action is, of course, error. The power lately given reviewing courts in this State to reduce sentences was clearly not intended as a substitute for a fair trial. Exercise of such power is intended for and restricted to the circumstances indicated in *People* v. *Taylor,* 33 Ill.2d 417, 424.

We believe admission of the testimony herein referred to was prejudicial error requiring a new trial. While, considering the time lapse since the original proceedings, we realize the practical problems involved in retrying defendant at this late date, we believe the State should have such right.

The judgment of the appellate court is accordingly reversed and the cause remanded to the circuit court of Cook County for a new trial.

*Reversed and remanded.*