THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LONNIE COPELAND, Defendant-Appellant.

First District (3rd Division)    No. 78-151

Opinion filed November 8, 1978.

Ralph Ruebner and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, James S. Veldman, and Kathleen M. McGury, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The defendant, Lonnie Copeland, charged with the armed robbery of Samuel Williams (Ill. Rev. Stat. 1975, ch. 38, par. 18—2), was found guilty of that crime by a jury in the circuit court of Cook County. He was sentenced to imprisonment for five to 10 years. On appeal the defendant contends that he was deprived of a fair trial because of the introduction of

testimony concerning a separate and independent armed robbery which was not probative of material trial issues, and a statement made by the Assistant State's Attorney in closing argument which characterized the defendant as a compulsive criminal who regretted the fact that he had not killed the witnesses to the crime.

On June 17, 1976, Sam Williams was robbed while working as a gas station attendant at Roosevelt and Kedzie Streets in Chicago. Williams and a customer, Jerry Wilkerson, also present at the robbery, testified at trial. They stated that at 4:30 a.m. two men entered the station and one of the men asked to buy cigarettes. The man handed Williams a $5 bill. Williams went to get the cigarettes and both men followed. The men drew guns and demanded all the money in the station. The man Williams identified as the defendant carried a big, blue steel revolver; he said the other man held a small automatic. Wilkerson corroborated this, adding that the small automatic was "blue steel."

The robbers ordered Williams and Wilkerson into the back of the station. They took money from both men. Williams and Wilkerson said that as the robbers were leaving the defendant stated, "You all got a good look at me. I am going to have to bust a cap, you know." They said they understood this to mean that the defendant intended to shoot them because they could identify him. Williams and Wilkerson begged for their lives. The other robber urged the defendant to leave. Williams and Wilkerson were warned that a sniper, positioned across the street from the station, would kill them if they tried to leave the station within 10 minutes after the robbers left.

Williams and Wilkerson identified the defendant as one of the robbers in court. Williams said he also picked the defendant's picture out of several photographs the police showed to him. Shortly thereafter he selected the defendant as one of the robbers from a lineup of six men at the police station.

Oscar Nunnery testified that he, too, was robbed in the early morning of June 17, 1976, while working as an attendant at a gas station. The station at which he worked on West Harrison Street in Chicago was less than a mile from the robbery at Roosevelt and Kedzie. Nunnery said that at about 2:30 a.m. two men entered the station. One of the men requested change for a $5 bill, saying that he intended to purchase cigarettes from the machine. As Nunnery made change, the man drew a large chrome-plated revolver and demanded money. Nunnery said he handed over $80 and also gave the robber a small blue steel automatic. Nunnery said he picked out the defendant from a police lineup as one of the robbers. He also made an in-court identification of the defendant as one of the robbers.

Lonnie Copeland, testifying in his own behalf, said he did not

participate in any robberies on June 17, 1976. At the time the witnesses placed him at the robberies he said he was at home playing cards with four friends. None of the friends testified.

In closing argument, the Assistant State's Attorney called the jury's attention to the fact that the defendant had initially planned to kill the witnesses and stated that perhaps the defendant now regretted not killing them. The defendant objected to the statement, characterizing it as inflammatory. The judge said:

"Any counsel has been allowed to make any observation that he feels the evidence in this case reflects. If they are not proper inferences, if they don't flow from the exhibits that had been admitted into evidence, if they don't flow from the testimony from the witness stand, they are to be rejected by the jury."

The defendant argues that it was error for the trial court to admit the testimony of Nunnery relating to the armed robbery not the subject of the trial. The defendant cites the general rule that evidence of other crimes is inadmissible because of its inherent tendency to prejudice a defendant by creating an inference that the defendant has a propensity toward crime. The defendant contends that Nunnery's testimony does not fall within any exception to this rule. The evidence showed that the neighborhood where the gas stations were located had a high crime rate. The defendant argues that crime is so common there that two gas station robberies in one night, two hours apart, denote nothing unusual. He suggests this makes the evidence of the other robbery only minimally probative of his guilt. Its only effect was to convey to the jury the idea that he was a professional robber. Even if the witnesses to one offense were mistaken, the defendant contends, this evidence would convince the jury to convict him of the other crime.

■■ Evidence of other crimes committed by a defendant is inadmissible when it is independent of or disconnected from the crime with which he was charged. (*People v. Cage* (1966), 34 Ill. 2d 530, 216 N.E.2d 805; *People v. Whitley* (1974), 18 Ill. App. 3d 995, 311 N.E.2d 282.) However, when evidence of other crimes is so closely connected with the main issues in the case at bar that it proves the accused guilty of the offense charged, such evidence can be introduced at trial. (*People v. Tranowski* (1960), 20 Ill. 2d 11, 169 N.E.2d 347.) This exception to the prohibition is recognized when:

"* * * [the evidence] fairly tends to place the defendant in proximity to the time and place of the offense charged, aids or establishes the defendant's identity, tends to prove intent, knowledge, motive, common scheme or design, or a fact material to the issue on trial." (*People v. Oliver* (1977), 50 Ill. App. 3d 665, 674, 365 N.E.2d 618.)

The rule and its exception are not automatically applied. Rather, the trial judge, in determining whether to permit the jury to hear evidence of another crime the defendant is alleged to have committed, must balance its relevancy against its tendency to inflame and prejudice the jury. (*People v. Butler* (1971), 133 Ill. App. 2d 299, 302, 273 N.E.2d 37.) Only when the evidence is sufficiently relevant to prove the accused guilty of the offense charged should it be admitted. *Oliver*, at 674.

■■ We believe that Nunnery's testimony was properly admitted. His description of the previous armed robbery and the defendant's participation in it served to establish the defendant's identity as the man who committed an almost identical crime, less than a mile away and two hours later. The proximity of the commission of the crimes and the location of the gas stations would not alone prove this similarity. (See, *e.g., People v. Spencer* (1972), 7 Ill. App. 3d 1017, 288 N.E.2d 612.) But another connection was the presence of the blue steel automatic at the robbery of Williams that Nunnery reported as earlier stolen from him. The closeness in time and scene of the crimes and the connection of the gun, coupled with the facts that two robbers participated in both occurrences and that in both occurrences the robbers used the deception of purchasing cigarettes with a $5 bill, linked the one armed robbery with the other. This evidence was relevant to prove Copeland guilty of the offense charged.

■■ The defendant also contends the statement in the closing argument by the State, that the defendant was a compulsive criminal who participated in a series of crimes and regretted he did not kill his witnesses, led to the conclusion that, regardless of guilt or innocence in the particular case, the defendant should be locked up to prevent a continuance of his crime spree. The defendant states that the link-up of the other crime ·he supposedly committed and the characterization of him as vengeful so inflamed and threatened the jury that they had no choice but to convict him.

As noted in *People v. Miller* (1958), 13 Ill. 2d 84, 109, 148 N.E.2d 455,
> "It is not improper for the prosecuting attorney to reflect unfavorably on the defendant, or to comment on his actions, if based on competent and pertinent evidence. [Citations.] Similarly the State's Attorney has a right to dwell on the evil results of crime and to urge fearless administration of the law. [Citation.]"

In the present case, there was evidence that the defendant speculated on killing the victims of the crime to avoid identification. While the Assistant State's Attorney's hypothesis that the defendant regretted not acting upon his idea is somewhat dramatic, we cannot say that it was improper to draw this conclusion from the evidence.

Deciding that Nunnery's testimony concerning the first armed

robbery was properly admitted means that the testimony was not so prejudicial as to deprive the defendant of a fair trial. (*Cf. People v. Butler.*) We cannot say that the evidence of the other armed robbery, coupled with the prosecutor's statement, somehow combined to force the jury to convict the defendant regardless of their belief in his innocence of the crime charged. We must affirm the judgment of the circuit court of Cook County.

Affirmed.

McNAMARA and McGILLICUDDY, JJ., concur.