THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TIMOTHY BAILEY, Defendant-Appellant.

Third District    No. 80-40

Opinion filed September 10, 1980.

Robert Agostinelli and Verlin R. F. Meinz, both of State Appellate Defender's Office, of Ottawa, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The defendant, Timothy R. Bailey, was convicted of the offense of aiding a fugitive following a jury trial in the Circuit Court of Peoria County. He received a determinate sentence of two years' imprisonment.

In this appeal the following issues are raised by the defendant: whether the trial judge properly admitted into evidence testimony concerning criminal activities engaged in by the defendant subsequent to the specific offense charged; whether the trial judge properly refused the defendant's tendered jury instructions relating to the affirmative defense of compulsion; and whether the two-year term of imprisonment imposed upon the defendant was excessive.

The evidence adduced at trial revealed the following. On September 25, 1979, the defendant was charged by indictment with aiding a fugitive in violation of section 31—5 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 31—5). Specifically, the indictment alleged that on September 18, 1979, the defendant, knowing that one Alan Bannister had committed an armed robbery and intending to prevent the apprehension of Bannister, drove Bannister away from the scene of the offense.

Prior to the trial the defendant orally moved *in limine* to bar the State from introducing any evidence showing criminal activity on his part occurring subsequent to the offense charged. The State was prepared to introduce such evidence in the form of the defendant's post-arrest statement to Detective Dearborn.

In his statement to Detective Dearborn, the defendant stated that he and Alan Bannister were driving around together on September 18, 1979. The defendant was driving and Bannister asked him to stop at a Convenient Food Store. The defendant drove to the food store, but was told by Bannister to park about a block away from the store. Although the defendant thought this was strange he did as Bannister asked. Bannister entered the food store and within a few minutes reappeared, carrying a gun in one hand and two cartons of cigarettes in the other. At that moment the defendant realized that Bannister had probably robbed the store. Bannister got into the car, told the defendant that he had robbed the store and instructed him to start driving.

The defendant then told Detective Dearborn of the following events, all of which occurred after he drove Bannister away from the scene of the

armed robbery. They first drove to the Slipper Club, where they met a woman. The three of them then drove to Farmington Road, where Bannister had sex with the woman. They then drove to a restaurant for breakfast, at which time the woman solicited their help in finding and assaulting a girl with whom the woman had been having problems. The trio searched for this girl but could not find her. They did chance upon another girl, however, one whom the woman said could be robbed. The three picked up this girl and returned to Farmington Road. There Bannister allegedly forced the girl to perform fellatio on him, while the defendant had consensual sex with the first woman in the front seat. The girl left the car following the alleged assault and telephoned the police, who subsequently stopped the three in the automobile. The defendant told Detective Dearborn that his role in these events was merely that of a driver.

In ruling on the defendant's motion *in limine*, the trial judge stated that Detective Dearborn could relate his conversation with the defendant as to what the defendant told the officer concerning the Convenient Food Store occurrence and about what transpired thereafter that evening, with the exception that all references to the sexual acts which occurred must be deleted. According to the trial judge, the express purpose for allowing the testimony regarding the subsequent conduct of the defendant as well as at the actual offense itself was to show the knowledge and intent of the defendant at the time of the alleged armed robbery. The defendant protested, claiming that the evidence failed to serve that purpose. Despite the defendant's protests, Detective Dearborn was called to testify and reiterated the events as described to him by the defendant, omitting any references to the sexual acts involved, as required by the trial judge's ruling on the defendant's motion *in limine*.

On cross-examination the detective recalled the defendant's saying that Bannister had a gun and that "he [the defendant] wasn't going to do anything he wasn't told by Mr. Bannister," and that he had not received any proceeds of the robbery from Bannister.

Also testifying for the State was Kim Engquist, a part-time employee of the Convenient Food Store which was robbed, and Brian Loflin, a friend of Ms. Engquist's who was in the store at the time of the robbery. Both testified as to events in the store involving Bannister, but neither was aware of the defendant's presence outside the store. The defendant offered no evidence in his own behalf.

During closing arguments the prosecutor outlined Detective Dearborn's testimony. He mentioned that the girl with whom Bannister and the defendant had breakfast also solicited them to commit an armed robbery of another woman. The defendant's objection to this remark was sustained, the judge instructing the jury to disregard the prosecutor's remark about

another armed robbery. The prosecutor then simply asked the jury to recall the various events testified to by Detective Dearborn.

The defendant contends that the evidence of other criminal activity in which he was involved was improperly received. He asserts that it was irrelevant to the crime charged, or, if relevant, was so remote as to be inadmissible upon comparison with its potential for prejudice. The State maintains that the evidence was properly admitted as it was independently relevant because it established the defendant's intent with respect to the crime charged.

■■ It is clear that a defendant is entitled to have his guilt or innocence determined solely with reference to the crime of which he is charged. (*People v. Hartness* (1977), 45 Ill. App. 3d 129, 358 N.E.2d 954.) As a general rule, evidence is held inadmissible if it points to crimes unrelated and unconnected to the crime for which the defendant is being tried. (*People v. Tranowski* (1960), 20 Ill. 2d 11, 169 N.E.2d 347; *People v. Hughes* (1977), 51 Ill. App. 3d 985, 367 N.E.2d 485.) However, evidence of other offenses is admissible if relevant for any purpose other than to show propensity to commit a crime. (*People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.) Evidence of other crimes which shows motive or intent, identity, absence of mistake or accident, or the existence of a common scheme or design may be admitted as independently relevant. (*People v. Lehman* (1955), 5 Ill. 2d 337, 125 N.E.2d 506.) In deciding whether to admit evidence of another crime the defendant is alleged to have committed, the trial judge must balance the relevancy of the evidence offered against its tendency to inflame or prejudice the jury. *People v. Copeland* (1978), 66 Ill. App. 3d 556, 384 N.E.2d 391.

Illinois law also requires that otherwise admissible evidence must be purged of references to other crimes if it is at all possible to do so without doing violence to the probative value of the evidence. Application of this rule is illustrated in *People v. Donaldson* (1956), 8 Ill. 2d 510, 134 N.E.2d 776, in which the Illinois Supreme Court held that confessions or statements of the defendant must be edited to exclude reference to other offenses, and in *People v. Pelate* (1977), 49 Ill. App. 3d 11, 363 N.E.2d 860, in which the appellate court held that evidence of flight, while admissible, had to be presented so as to exclude details of a crime committed during the flight.

In the case at bar the evidence to which the defendant objects, specifically the defendant's activities with Bannister subsequent to the armed robbery, was admitted as probative of the defendant's knowledge and intent at the time he aided the departure of Bannister from the scene of the armed robbery. We note that the State does not pursue the knowledge rationale on appeal and rightly so, for as the defendant points out in his brief, the evidence in question is not probative on that element of the offense

charged. The relevant knowledge in the case against the defendant was his knowledge that Bannister had committed the offense of armed robbery. Since the State had the defendant's statement that Bannister had mentioned robbing the store as soon as he returned to the defendant's car, the subsequent criminal activities evidence was irrelevant on the knowledge element.

■■ The second rationale stated by the trial judge for the admission of the disputed evidence was that it showed the intent of the defendant. Intent was a crucial issue before the jury as it was necessary to prove that the defendant intended to aid Bannister in fleeing the scene of the crime, knowing that Bannister had committed the armed robbery. The crucial aspect of intent involved was the defendant's intent to prevent Bannister's apprehension. Although the evidence of the defendant's subsequent activities may have been probative on this issue, it would have sufficed to say that the defendant and Bannister drove around without the defendant making any effort to effect Bannister's arrest. Giving the details of their activities, with the attendant evidence of criminal behavior, was unnecessary and therefore erroneous, despite the State's protestations that the evidence did not indicate that any of the underlying criminal objectives of the defendant and Bannister were realized.

■■ In holding that the admission of evidence relating to the defendant's activities subsequent to the offense charged for the purpose of showing intent was error, we specifically reject the State's argument that such evidence was necessary to show some criminal activity of Bannister in order to show a basis for the defendant's charge of aiding a fugitive. Bannister was labeled a fugitive because of his armed robbery of a Convenient Food Store, not for any subsequent criminal activities. We likewise specifically reject the State's assertion that the disputed evidence was admissible as an anticipatory rebuttal for the defendant's proposed compulsion defense. No argument to this effect was made by the State at the trial, nor did the trial judge's rationale for admitting the disputed evidence reflect a consideration of the defendant's possible compulsion defense. Furthermore, elsewhere in its brief on appeal the State argues that there was no evidence of compulsion presented and thus no compulsion instructions were warranted. The State cannot be heard to argue the necessity of admitting evidence to defeat a compulsion defense while at the same time arguing that no evidence of compulsion was presented.

People v. Clark (1956), 9 Ill. 2d 46, 137 N.E.2d 54, and People v. Collins (1977), 51 Ill. App. 3d 993, 367 N.E.2d 504, two cases relied on by the State in support of its position that the evidence of other criminal conduct was relevant and thus admissible, are distinguishable from the case at bar. In both Clark and Collins the evidence clearly related to intent, knowledge,

motivation and design, whereas the evidence in the case at bar is not sufficiently probative of any of these elements to overcome its prejudicial effect.

■■ Having found error in the admission of the disputed evidence, we must now decide whether such error may be considered harmless. The test for harmlessness is whether the appellate court is "able to declare a belief that it was harmless beyond a reasonable doubt," (*Chapman v. California* (1967), 386 U.S. 18, 24, 17 L. Ed. 2d 705, 711 87 S. Ct. 824, 828.) The erroneous introduction of evidence of a defendant's prior criminal conduct does not, *per se*, constitute grounds for reversal; such an error may be considered harmless where the evidence shows that the defendant is guilty beyond a reasonable doubt. *People v. Nicholson* (1978), 61 Ill. App. 3d 621, 377 N.E.2d 1063.

■■ In the present case testimony was presented by Detective Dearborn to the effect that the defendant knew Bannister had committed an armed robbery as soon as Bannister returned to the defendant's car after leaving the Convenient Food Store. Knowing this, the defendant drove Bannister away from the scene and made no attempt to aid in his apprehension. This undisputed evidence contains all the elements necessary to find defendant guilty of the charge of aiding a fugitive. For this reason we believe any error arising from the introduction of the evidence relating to the defendant's subsequent criminal activities was harmless.

The defendant next contends that reversible error was committed by the trial judge in refusing the defendant's tendered jury instructions on the affirmative defense of compulsion. We disagree.

Section 7—11(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 7—11(a)) defines the defense of compulsion as:

"(a) A person is not guilty of an offense, other than an offense punishable with death, by reason of conduct which he performs under the compulsion of threat or menace of the imminent infliction of death or great bodily harm, if he reasonably believes death or great bodily harm will be inflicted upon him if he does not perform such conduct."

The statute has been interpreted to mean that the defendant must believe violence will be inflicted upon him if he does not perform the particular conduct which would otherwise constitute a crime. The danger must be imminent; a threat of future injury is simply not enough to excuse a criminal act. *People v. Davis* (1974), 16 Ill. App. 3d 846, 306 N.E.2d 897.

The defendant in the present case relies solely on the following exchange, which took place during cross-examination of Detective Dearborn regarding the defendant's post-arrest statement, to substantiate his contention that a compulsion defense was raised:

"Q. Well, isn't it true in the course of the conversation, one of the

things that Mr. Bailey made clear to you was that he indicated that Mr. Bannister had the gun and he, Mr. Bailey, wasn't going to do anything he wasn't told by Mr. Bannister?

A. Yes.

Q. He told you that, didn't he?

A. Yes."

Based on this exchange, the defendant offered the following jury instruction regarding the defense of compulsion, using the format of Illinois Pattern Jury Instructions, Criminal, No. 24.21 (2d ed. 1971):

"It is a defense to the charge made against the defendant that he acted under the compulsion of threat or menace of the imminent infliction of death or great bodily harm, if he reasonably believed death or great bodily harm would be inflicted upon him if he did not perform the conduct with which he is charged."

The defendant also offered a modified issues instruction which included an issue regarding the State's negation of the affirmative defense. In rejecting both of these instructions the trial judge stated:

"It's the opinion of this Court that there has not been any testimony in the trial whatsoever to substantiate a defense of compulsion. There has been no testimony about any threats or imminent infliction of death or great bodily harm upon the defendant, nor that he believed death or great bodily harm would be inflicted if he did not perform the conduct with which he was charged."

■■ Although the defendant is correct in his assertions that a defendant in a criminal case is entitled to have the jury consider any legally recognized defense which has some foundation in the evidence (*People v. Stombaugh* (1972), 52 Ill. 2d 130, 284 N.E.2d 640; *People v. Harris* (1976), 39 Ill. App. 3d 805, 350 N.E.2d 850) and that only slight evidence on a given defense has been required to justify an instruction on that defense (*People v. Willis* (1977), 50 Ill. App. 3d 487, 365 N.E.2d 300), we agree with the trial judge's determination that the defendant in the case at bar has failed to present even slight evidence of compulsion such as would justify the giving of the tendered instructions.

*People v. Adcock* (1975), 29 Ill. App. 3d 917, 331 N.E.2d 573, and *People v. Creach* (1979), 69 Ill. App. 3d 874, 387 N.E.2d 762, *aff'd on other grounds* (1980), 79 Ill. 2d 96, 402 N.E.2d 228, cited by the defendant, are both distinguishable from the case at bar.

In *Adcock* this court reversed the defendant's conviction and ruled that a compulsion instruction should have been given where the evidence showed that an overt threat by one Youngblood had been made toward an individual in the company of Adcock. In so holding we noted that the facts showed violence and threats of violence on Youngblood's part from which

the defendant Adcock could reasonably have believed that he was in imminent danger of great bodily harm. In the present case no overt threats were made by Bannister against the defendant or anyone else while Bannister was in the defendant's company.

In *Creach* one defendant, Ruppert, was convicted of armed robbery because of his actions with his co-defendant, Creach, in taking a victim's car and purse. The evidence showed that Creach knew the victim and went to her home with Ruppert, intending to steal her car. The victim, Irion, eventually came to the car after Creach went into her house. Ruppert had remained in the car. He got out when Creach and Irion returned but was ordered back in by Creach. Irion drove the car to a location designated by Creach, where he stabbed her in the throat. All three persons had left the car but returned to it at Creach's direction. Creach stabbed Irion again. All three persons left the car but got back in shortly thereafter. Creach then shot Irion. All three again left the car, Irion running down the road. Creach shot her again. He then returned to the car, ordered Ruppert inside and began driving to Ohio. Irion's purse was still in the car. Creach and Ruppert used money and credit cards from it on the way to Ohio. Creach kept his gun on the front seat during this trip. At trial Ruppert tendered instructions on compulsion in defense to the armed robbery charge. The trial court refused the instructions. The appellate court found error. Reviewing the facts and the principles of law noted above, the court concluded that the facts showed "some evidence" of compulsion and ruled that, consequently, a compulsion instruction should have been given. 69 Ill. App. 3d 874, 897, 387 N.E.2d 762, 779.

Although the evidence presented in *Adcock* contains few specifics to substantiate a compulsion defense, we agree with the State's analysis that the great degree of specificity and detail concerning all the events which transpired is more conclusive and creates a stronger inference of compulsion than does the evidence in the case at bar from which no inference of compulsion can be drawn.

Lastly, the defendant contends that the sentence of two years' imprisonment imposed on him is excessive. He bases his contention on the allegation that the evidence showed several factors in mitigation which greatly outweigh the one general factor in aggravation cited by the trial court.

The defendant was convicted of aiding a fugitive, a crime classified as a Class 4 felony. (Ill. Rev. Stat. 1979, ch. 38, par. 31—5.) The range of sentences possible for that conviction included probation, periodic imprisonment, conditional discharge, or a determinate term of imprisonment of not less than one year nor more than three years. See Ill. Rev. Stat. 1979, ch. 38, pars. 1005—5—3(b) and 1005—8—1(a)(7).

Pursuant to the directions contained in sections 5—5—3.1 and 5—5—3.2 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38,

pars. 1005—5—3.1 and 1005—5—3.2), the trial court considered factors in mitigation and aggravation in imposing sentence. In aggravation, the trial judge found that a sentence of incarceration was necessary to deter others from committing a similar crime. In mitigation, he found that the defendant's criminal conduct neither caused nor threatened serious physical harm to another, that defendant had no prior history of delinquency or criminal conduct and that the defendant apparently led a conviction-free life prior to the instant crime.

In imposing sentence the trial judge must consider all facts and circumstances which bear on the sentencing procedure. The standard to be applied by appellate courts in reviewing the propriety of a sentence imposed by the trial court was stated in *People v. Cox* (1979), 77 Ill. App. 3d 59, 396 N.E.2d 59, as follows:

> "The standard of such appellate presumptions directs the reviewing court to indulge in every reasonable intendment favorable to a ruling of the court below and, in the absence of an affirmative showing to the contrary, to presume that the ruling of the court was properly made and for sound reasons." 77 Ill. App. 3d 59, 64, 396 N.E.2d 59, 64.

Although the quantum of evidence which must be brought to the attention of the reviewing court to demonstrate error in the trial judge's sentence, and thus to overcome the presumption of correctness inherent in the sentence imposed, is subject to dispute (see *People v. Childers* (1980), 83 Ill. App. 3d 358, 403 N.E.2d 1295; *People v. Boyd* (1980), 81 Ill. App. 3d 259, 401 N.E.2d 304; *People v. Meeks* (1979), 75 Ill. App. 3d 357, 393 N.E.2d 1190, *appeal allowed* (1979), 79 Ill. 2d 623), we find that the deviation from the sentencing objectives set forth in the Unified Code of Corrections evident in the sentence imposed in the instant case such as to warrant reversal and remand.

The defendant, age 24, had no prior history of delinquency or criminal conduct, and the presentence report indicated he had the strong support of his family and a steady employment record. These strong factors in mitigation, when compared with the single aggravating factor cited, render the two-year sentence of imprisonment imposed excessive.

The record reveals that the defendant had been incarcerated 118 days up to the time of sentencing. This may well have been a sufficient term of incarceration for the nonviolent crime of aiding a fugitive.

Accordingly, the judgment of the Circuit Court of Peoria County is affirmed as to the defendant's conviction but is reversed as to the sentence imposed and is remanded for resentencing.

Conviction affirmed; sentence reversed and remanded.

STOUDER and BARRY, JJ., concur.