THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHN HOPPOCK, Defendant-Appellant.

Third District    No. 80-154

Opinion filed July 14, 1981.

Robert Agostinelli and Verlin R. F. Meinz, both of State Appellate Defender's Office, of Ottawa, for appellant.

Carl E. Hawkinson, State's Attorney, of Galesburg (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

The defendant, John Hoppock, appeals his conviction for resisting arrest (Ill. Rev. Stat. 1979, ch. 38, par. 31—1). The defendant appeared *pro se*. He was tried by a jury, and upon his conviction was sentenced to 180 days imprisonment.

The two arresting officers and a third officer testified for the State. Gerald McLaren, a Knox County sheriff's deputy, testified that he was at the county courthouse on October 29, 1979. He received a call regarding a disturbance on the first floor and, accompanied by Deputies Muir and Benson, went to investigate. He was informed that the defendant had been causing a problem and had gone upstairs. The officers went upstairs and heard loud, profane talk. The defendant then objected to the testimony by stating:

> "He is testifying to something that happened not within ten minutes as the State's Attorney claims but at least two hours before this incident and if he wants to—if he wants to try me on a disorderly conduct charge I think that is what he should be charging me on instead of resisting arrest."

After a "side-bar conference" off the record, the objection was sustained. A later remark by the court indicates that the objection had been sustained because of the remoteness of time. The court, at that later time, stated that both parties were to refrain from discussing incidents prior to about 3 o'clock on the afternoon of October 29. Deputy McLaren continued to testify, indicating that the time of this disturbance was 3:25 p.m. Hoppock was being loud and profane on the second floor. He was taken to a bailiff's office and told to calm down or leave. He continued to talk and became belligerent toward the officers. Deputies Benson and Muir then escorted the defendant to the door of the courthouse. Deputy McLaren did not know what happened to the defendant after that.

Deputies Rick Benson and William Muir testified. They each stated that the defendant was causing a disturbance on the first floor of the courthouse. He then became loud and profane in a discussion with a prosecutor on the second floor. He was told to calm down or leave. He went outside the office and continued his loud, profane conversation. He was then escorted to the courthouse door. After escorting the defendant to the door, the officers told the defendant to leave and threatened to arrest him if he returned. The defendant walked a short distance but turned and began yelling at the officers. Benson and Muir warned the defendant again. The defendant walked toward a wedding party gathered on the lawn and berated the officers in a loud and profane manner to this group. The officers then walked toward the defendant and advised him that he was under arrest for disorderly conduct. He was placed in a "frisk" position against a nearby car and one of his hands was handcuffed.

The defendant then pushed himself away from the car and began swinging and kicking at the officers. After a brief scuffle, he was dragged to the ground and subdued. Deputy Benson suffered torn and grass-stained clothing, and his sunglasses were broken. Deputies Benson and Muir were not in uniform at the time they arrested the defendant. They testified that the defendant had previously seen them in plain clothes during the performance of their police duties.

The defendant testified in his own behalf. He stated that he was at the courthouse in Galesburg because he had been arrested for reckless driving in a rural area and his car had been towed to Galesburg. He was upset because the authorities failed to provide him with a ride home. "I got a little belligerent maybe, and I was asked to leave the courthouse by a couple of these gentlemen." He testified that, as he was walking away from the courthouse, "[t]hey knocked me down, injured my arm, and handcuffed me. * * * I was just attacked, beaten and drug off to jail." This, testified the defendant, occurred "in front of witnesses and if I had been in the wrong the police department would have had the witnesses in this courtroom and there is not one here." The defendant asserted that he had tried to speak to the members of the wedding party as he was being taken into custody, but was not allowed to. He also asserted that when he tried to gain access to public marriage records, so that he could contact potential witnesses from the wedding party, these records were denied him.

The defendant's wife testified that, when released on bond, the defendant had an elbow injury for which he was treated at a hospital. He did not have such an injury prior to his leaving home that morning.

The defendant called his physician, Dr. Dean Johnson. Dr. Johnson testified that he had been the defendant's personal physician for some time. Dr. Johnson testified that he had treated the defendant for a chronic infection in the bones of his legs, which at times had required hospitalization. He also stated that he had treated the defendant for a condition of diabetes.

The prosecutor then objected on the grounds that "the whole matter is immaterial. It goes in no way to the—to show any probativeness regarding the charge. It can only serve to confuse the jury." The jury was then removed. The defendant continued to question Dr. Johnson as an offer of proof. Dr. Johnson testified that he had written a prescription for the defendant for Talwin, a painkiller. He said that he had done so because of the defendant's complaints' of pain. He testified that it was a powerful pain killer, but that it should not affect the plaintiff's ability to drive. When asked whether he knew the defendant to have had two spinal fusion operations, the doctor replied that he had no personal knowledge of it and had received no clinic reports on the matter, but that the scars on

defendant's back were consistent with his "understand[ing] that that had been the case."

Defendant's first contention on appeal is that evidence of the incidents leading to his arrest, particularly evidence of defendant's loud and profane behavior, should have been excluded from trial because it constituted evidence of a crime other than the one for which defendant was tried. Although there is evidence that defendant has waived this issue by failing to properly present and preserve an objection, we shall nevertheless discuss its merits.

■■ "As a general rule, evidence is held inadmissible if it points to crimes unrelated and unconnected to the crime for which the defendant is being tried. (*People v. Tranowski* (1960), 20 Ill. 2d 11, 169 N.E.2d 347; *People v. Hughes* (1977), 51 Ill. App. 3d 985, 367 N.E.2d 485.) However, evidence of other offenses is admissible if relevant for any purpose other than to show propensity to commit a crime. (*People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.)" (*People v. Bailey* (1980), 88 Ill. App. 3d 416, 420, 410 N.E.2d 545.) Mere relevancy, however, is not sufficient. "Rather, the actual need for the evidence must be considered in light of the relevant issues and the other evidence available to the prosecution and must be balanced against the prejudicial effect its admission will have upon the jury." (*People v. Butler* (1975), 31 Ill. App. 3d 78, 80, 334 N.E.2d 448.) Such evidence is proper "only if it may fairly be said that its probative value in establishing guilt outweighed its prejudicial effect." *People v. Cage* (1966), 34 Ill. 2d 530, 534, 216 N.E.2d 805; *People v. Diaz* (1979), 78 Ill. App. 3d 277, 280, 397 N.E.2d 148.

■■ The issue of whether evidence of the crime for which defendant was placed under arrest may be admitted at defendant's trial for resisting that arrest was addressed by this court in *People v. Myers* (1968), 94 Ill. App. 2d 340, 348-49, 236 N.E.2d 786. There we held:

> "Section 31—1 of the Criminal Code, under which defendant was charged with resisting a peace officer, requires as one of its elements that the peace officer be engaged in 'any authorized act within his official authority.' This being so, testimony that the officers were acting under a valid complaint and warrant was relevant to the issues of one of the crimes for which defendant was being tried."

We note that the opinion in *Myers* slightly misquotes the statute. Then (Ill. Rev. Stat. 1965) as now (Ill. Rev. Stat. 1979), section 31—1 prohibited the resistance or obstruction of one known to the person to be a peace officer of "any authorized act within his official *capacity*." The substitution, in the *Myers* opinion, of the word "authority" for "capacity" does not alter the meaning of that opinion.

The defendant argues that the making of an arrest is always an

"authorized act" under the statute, because a private person "is not authorized to use force to resist an arrest which he knows is being made either by a peace officer * * *, even if he believes that the arrest is unlawful and the arrest in fact is unlawful." (Ill. Rev. Stat. 1979, ch. 38, par. 7—7.) "Consequently, resistance of even an unlawful arrest by a known officer is a violation of section 31—1." (*People v. Locken* (1974), 59 Ill. 2d 459, 322 N.E.2d 51; *People v. Shinn* (1972), 5 Ill. App. 3d 468, 283 N.E.2d 502.) Therefore, argues the defendant, no evidence of the offense for which defendant was arrested is needed to show that the officers involved were "authorized" to make the arrest. While this is true, the State still bears the burden of proof beyond a reasonable doubt. Therefore, it may introduce cumulative evidence to establish an element of the offense, *i.e.*, the authority of the peace officer to perform the act resisted. (See *People v. Nicholls* (1969), 42 Ill. 2d 91, 99, 245 N.E.2d 771, *cert. denied* (1970), 396 U.S. 1016, 24 L. Ed. 2d 507, 90 S. Ct. 578.) The relevancy of the evidence is, therefore, established, as it was in *People v. Myers*, which was decided under the same statutory definitions as *People v. Locken* and *People v. Shinn*.

Furthermore, the defendant disputed the State's contention that he knew the plain clothes officers to be peace officers. Evidence of the incidents leading to defendant's arrest was, therefore, relevant to proof of his state of mind, as the statute requires that the officer resisted be "known to the person to be a peace officer." (Ill. Rev. Stat. 1979, ch. 38, par. 31—1.) Officer Benson stated that all of the events to which he had testified occurred in a span of five to seven minutes. As the defendant's knowledge was an element of the crime, and the officers dealings with the defendant at the courthouse were relevant to proving that knowledge, it was not necessary for the court to exclude evidence of this continuous transaction which incidentally tended to show a prior criminal act by the defendant. See *People v. Hanson* (1977), 44 Ill. App. 3d 977, 984, 359 N.E.2d 188; compare *People v. Bailey* (1980), 88 Ill. App. 3d 416, 410 N.E.2d 545.

Although the evidence is relevant, it may yet be an abuse of the court's discretion to admit it if its probative value is outweighed by the prejudice a defendant may suffer as a result of its admission. In this cause, the defendant himself, through his testimony and his cross-examination of the State's witnesses, introduced evidence of other crimes committed by him. He testified that he was in the courthouse that day on a reckless driving charge. In response to the defendant's questioning of him, Deputy Muir testified that the defendant had seen him out of uniform, in 1975, while he worked for the Knox County Sheriff's Department. Muir, in response to defendant's questions, testified that he was at defendant's home that year in response to domestic disturbance calls. When asked by

the defendant, "Did you ever arrest me?" Muir responded, "Yes, I have arrested you in the past, sir."

The law distrusts evidence of other crimes because it tends to raise too strong an inference that the accused is guilty of the charged crime due to his character as one who is likely to commit crimes. (*People v. Lehman* (1955), 5 Ill. 2d 337, 342, 125 N.E.2d 506; *People v. Sanders* (1978), 59 Ill. App. 3d 650, 654, 375 N.E.2d 921.) Where the defendant himself elicits evidence of past crimes, the prejudice associated with a recitation of the details of the crime leading to the allegedly resisted arrest is minimal. Therefore, the court did not abuse its discretion in admitting the evidence.

The defendant next contends that he was improperly denied the opportunity to question his physician concerning his physical condition at the time of the incident. Prior to the questioning of Dr. Johnson, the State challenged the relevancy of the doctor's testimony, and a conference was held out of the presence of the jury. The defendant told the court, "The thing I'm trying to prove is that I am incapable of committing the feats of strength that these officers claimed I did." The court indicated that it would allow the testimony if it were to establish the doctor's opinion that the defendant was physically incapable of resisting the police officers in the manner alleged. The testimony and offer of proof then proceeded as indicated previously in this opinion.

■■ ■ A defendant is entitled to all reasonable opportunities to present evidence which might tend to create a doubt as to his guilt. However, this caveat is circumscribed by the requirement that in order to be admissible, the evidence offered must be relevant. Relevancy is established where a fact offered tends to prove a fact in controversy or renders a matter in issue more or less probable. (*People v. Durr* (1978), 58 Ill. App. 3d 525, 532, 374 N.E.2d 873.) The offering party has the burden of showing relevance. *People v. Duarte* (1979), 79 Ill. App. 3d 110, 125, 398 N.E.2d 332.

■■ The defendant indicated that he wished to establish his physical incapacity to effect the resistance described by the officers. His offer of proof failed to establish this. The specific testimony elicited was never tied to a genuine issue or controversy in this cause. On cross-examining the arresting officers, the defendant expressed disbelief that two large officers could not control a man who had one hand behind his back. The officers indicated that they were able to effect the arrest with little difficulty; but that they do not normally "rough house" an arrestee. The officers never claimed that defendant's resistance was effective, only that he did resist by swinging and kicking at them. The defendant weighs over 200 lbs. There is no dispute that he is capable of walking. Nor did he argue that he was incapable of kicking or swinging his arms. The arresting

officers testified to no other "feats of strength" by the defendant. Defendant's offer of proof did not tend to discredit the State's witnesses. The court did not abuse its discretion in denying the admission of defendant's medical testimony.

For the reasons indicated, the judgment of the Circuit Court of Knox County is hereby affirmed.

Affirmed.

SCOTT, P. J., and BARRY, J., concur.