THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DENNIS THOMAS, Defendant-Appellant.

Fourth District   No. 4—91—0221

Opinion filed December 30, 1991.—Rehearing denied January 29, 1992.

Daniel D. Yuhas and Lori L. Mosby, both of State Appellate Defender's Office, of Springfield, for appellant.

Craig H. DeArmond, State's Attorney, of Danville (Kenneth R. Boyle, Robert J. Biderman, and Monroe D. McWard, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

Defendant, Dennis Thomas, was convicted by a Vermilion County jury of two counts of delivery of 15 grams, but less than 100 grams, of a substance containing cocaine. (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(a)(2).) Defendant was tried jointly with codefendant Frank Miles, who was convicted as well. After a sentencing hearing, the court sentenced defendant to eight years' imprisonment on each count and ordered the terms to be served concurrently. Defendant was granted credit for the 176 days he was in custody before sentencing. The court also imposed a $2,750 drug fine. Defendant appeals, arguing (1) the court erred by sustaining the State's hearsay objection to testimony by the codefendant that, on the day the first delivery occurred, no conversation about drugs occurred between defendant and "the man with the cane," who had allegedly delivered the drugs to an undercover agent; and (2) he is entitled to 177 days' credit toward the sentence imposed, and (3) to $885 credit against his mandatory drug fine. We affirm defendant's conviction and remand the case for a determination of the credit to which defendant is entitled against his mandatory fine.

The drug deliveries allegedly occurred on June 8 and 13, 1989. Rod Rodriquez, special agent with the Drug Enforcement Administration (DEA), testified that in April, May, and June 1989, he was working as an undercover agent in an investigation of William Taylor. As part of this investigation, on June 7, 1989, Rodriquez arranged to purchase an ounce of cocaine for $1,400 from Taylor. When they arrived at 1919 Cannon Street in Danville, Illinois, Rodriquez gave Taylor the money and Taylor went into the residence. He returned to the vehicle and told Rodriquez he had given Dennis the money but the cocaine had not arrived. They returned to this residence later. After entering the residence, Taylor told Rodriquez that defendant, Dennis Thomas, had said the cocaine would not arrive until noon. After another failed

attempt to obtain the cocaine, Taylor was given a half gram of cocaine. At 5 p.m., Agent Casagrande replaced Rodriquez in surveilling defendant's home. Casagrande met with Taylor across the street from the residence. Casagrande testified he stayed in his vehicle across the street from 5 p.m. until 1:25 a.m., except for two times when he went to meet with his superiors. Defendant exited the residence at one point and told Casagrande the cocaine would not arrive until 10 p.m., but if Casagrande waited he would find the cocaine to be real good. According to Casagrande, defendant left the residence that evening with codefendant Frank Miles, who was driving a white Oldsmobile.

A white Oldsmobile appeared in a nearby alley at 1:25 the next morning. Taylor left Casagrande's vehicle, approached the Oldsmobile, leaned in, and retrieved something. He returned to Casagrande's vehicle with a plastic bag of a white powdery substance.

Casagrande met with defendant on June 13, 1989, to arrange another deal. Defendant told Casangrande to phone him at 5 that evening. Casagrande's 5 p.m. conversation with defendant had been recorded and was played to the jury. The tape recording indicated the parties arranged a cocaine purchase for 9 that evening. When Casagrande arrived to purchase the drugs, defendant was outside the residence. Casagrande also saw the codefendant, Frank Miles, and a female companion sitting in a tan Volvo. Defendant told Casagrande to give him the $1,350 for the cocaine and he would go with codefendant Miles to obtain it. Casagrande returned to his vehicle to wait. Defendant got into the codefendant's vehicle and departed. Approximately an hour and a half later, a woman exited the residence and told Casagrande that defendant had called and stated Casagrande's package was on the top step of the stairway to a residence across from 1919 Cannon Street. Casagrande retrieved the package.

Casagrande contacted defendant again July 12, 1989. The codefendant was also present when they met. Casagrande complained that defendant's deals took too long. Defendant stated he thought Taylor may have overcharged Casagrande for the first purchase.

City of Danville police officer Larry Wilson testified he participated in the June 8, 9, and 13, 1989, surveillance of the drug transactions. He identified a white Oldsmobile he had seen outside the Cannon Street address at 10 p.m. on June 13. He had followed the vehicle until he heard from Casagrande that Casagrande had received the cocaine.

Illinois State Police officer Robert Putnam testified he was also involved in the surveillance of the drug transactions. He too, saw the

white Oldsmobile on June 13 and followed it until the sale to Casagrande was complete.

Doug Eckerty, a special agent for the Vermillion County Metropolitan Enforcement Group, testified he, too, saw the white Oldsmobile parked outside 1919 Cannon Street on June 8, but he did not observe it on June 13.

Phylis Miles, codefendant's wife, testified that on the evening of June 13, 1989, she and the codefendant went to defendant's home in their Volvo. Defendant approached their car to talk with the codefendant. They dropped defendant off at a tavern and returned to their home. Although they owned an Oldsmobile, she stated it had been in Chicago for five days to a week.

Codefendant Frank Miles testified he knew defendant from work. On June 8, defendant was to sell a truck for him. After work on that day, he picked defendant up at home to go play pool at a tavern. Afterward they stopped for coffee and donuts. When they returned to defendant's home early in the morning of June 9, they stopped across the street to speak with "a man with a cane." According to codefendant Miles, no money was exchanged between defendant and the man with the cane. He saw defendant on June 13 to again discuss selling the truck. He dropped defendant off at a tavern and returned home. He was driving a Volvo. His wife had loaned their Oldsmobile to her sister.

Defendant's attorney asked codefendant Miles whether, on the evening of June 8 or the early morning hours of June 9, he heard any conversation between defendant and "the man with the cane" regarding drugs. The State's hearsay objection to codefendant's answer to this question was sustained. Codefendant Miles testified "the man with the cane" did not reach into the vehicle at any time that evening. He also stated at no time did he see a plastic bag containing a white powdery substance. According to Miles, defendant never opened the passenger door, nor was the vehicle's interior light turned on. At no time on June 13 did codefendant Miles see defendant with a plastic bag with a white powdery substance.

Defendant's grandfather testified he was at defendant's residence June 8, 1989, and did not see any white powder or drug paraphernalia in defendant's possession. Defendant's stepfather of eight years testified defendant had a reputation for being law abiding and for not being involved with drugs.

The jury convicted both defendant and codefendant Frank Miles of the June 8 and 13 drug deliveries. The court sentenced defendant

to two concurrent eight-year terms of imprisonment, gave him credit for 176 days served, and also imposed a $2,750 drug fine.

Defendant first argues the court erred by sustaining the State's objection to codefendant Frank Miles' testimony about whether he heard any drug-related conversation between defendant and "the man with the cane," presumably Taylor, on the morning of June 9, 1989. He contends this testimony was exculpatory and should have been permitted. According to defendant, it should not have been considered hearsay because it was not being offered to prove the truth of the matters asserted in the conversation. The State contends the testimony was hearsay. If the testimony was not hearsay, the State argues excluding it was harmless error.

■■ The hearsay objection should not have been sustained. There was a conversation between Taylor and defendant. Miles overheard this conversation. Miles was asked the following on cross-examination: "And you didn't hear any conversation regarding drugs between Dennis and the man with the cane?" That question would not elicit an answer directed at proving the truth of any matters asserted in the conversation. Instead, the question sought to elicit that a certain topic—drugs—was not mentioned. The editorial conclusion of Miles that he heard no conversation regarding drugs is not hearsay because it was not offered to prove the truth of any matter *asserted* in the out-of-court conversation. The court erred in sustaining the objection. The error was, however, harmless. A reviewing court should not reverse a conviction merely because of such an error unless the error could have affected the verdict. (*People v. Tranowski* (1960), 20 Ill. 2d 11, 17, 169 N.E.2d 347, 350; *People v. Terry* (1988), 177 Ill. App. 3d 185, 192, 532 N.E.2d 568, 573.) The evidence establishes defendant's guilt beyond a reasonable doubt. The codefendant was permitted to testify he did not see any money exchanged, nor did he see defendant with any drugs at any time on June 9. Despite this evidence, the jury found both codefendant and defendant guilty of delivery of controlled substance on this date. The jury clearly did not view the codefendant as a credible witness. The additional testimony by him would not have changed the jury's verdict. Accordingly, the error does not require a new trial.

■■ Defendant also argues he is entitled to $5-per-day credit toward his mandatory drug fine for time served in custody prior to his sentencing. The State concedes the law requires defendant receive this credit because he was not informed in writing by the clerk of the court after his conviction that he was entitled to it. (Ill. Rev. Stat. 1989, ch. 38, par. 110—14; *People v. Johnston* (1987), 160 Ill. App. 3d

536, 544, 513 N.E.2d 528, 534.) We remand defendant's case to permit the trial court to determine the proper credit.

██ At the sentencing hearing, the trial judge credited defendant 176 days' for time spent in custody before sentencing. Defendant argues he should have been credited 177 days. The record indicates defendant was arrested on January 8, 1990, and sentenced on March 20, 1991. It would appear defendant is entitled to either 176 or 177 days of credit dependent upon how the date of arrest and the date of sentencing are treated. The State, however, argues that defendant ought not receive double credit for the day he was given over to the Department of Corrections, and suggests this court remand the cause for completion of the record and issuance of an amended judgment order if appropriate. After the trial court determines the sentence credit to which defendant is entitled, it can compute the amount by which defendant's fine must be credited.

We affirm defendant's conviction and remand the case for a determination of the sentence credit to which defendant is entitled, as well as the credit against his mandatory fine.

Affirmed, and cause remanded.

GREEN, P.J., and McCULLOUGH, J., concur.