THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HUTCHIE MOORE, Defendant-Appellant.

First District (4th Division) No. 84—2861

Opinion filed August 6, 1987.—Rehearing denied September 15, 1987.

Steven Clark, of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., and Rimas F. Cernius, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Following a jury trial, defendant Hutchie Moore was found guilty of two counts of murder and sentenced to natural life in prison without parole. Moore now brings this appeal contending that: (1) a doubt exists as to whether he was fit to stand trial; (2) he was denied the right to represent himself; (3) a reasonable doubt exists regarding whether Moore was sane at the time of the murders; (4) the prosecution misstated the law during closing argument; and (5) the trial court erroneously restricted the testimony of Moore's expert witnesses during surrebuttal.

We affirm.

BACKGROUND

On October 21, 1983, defendant Moore shot and killed Judge Henry Gentile and James Piszczor during divorce proceedings that were being conducted in Judge Gentile's courtroom in Chicago, Illinois.

Following Moore's indictment, the public defender was appointed to represent him. The public defender petitioned the Illinois Supreme Court to grant Moore a substitution of judges in light of the fact that Moore had killed a Cook County circuit court judge. The supreme court granted Moore's request and ordered a judge from the 19th Judicial Circuit to preside over Moore's trial.

At the first hearing, the trial court ordered Moore to undergo psychological evaluation to determine if Moore was fit to stand trial. The trial court also informed Moore that he could waive his right to an attorney if he so desired.

The fitness hearing was set to commence on March 26, 1984. Prior to the beginning of the hearing, however, Moore asked the trial court to remove the public defender and to order a private attorney to be appointed. The trial court again admonished Moore that he could represent himself if he so desired. In a letter which Moore wrote to the trial court, Moore claimed that he was fit to stand trial and that he was not satisfied with the performance of the public de-

fender's office. The trial court allowed Moore to conduct some of the questioning during the fitness hearing himself but also ordered that Moore must have an attorney present for assistance throughout the hearing.

During the fitness hearing, the prosecution's evidence consisted of the testimony of three medical experts, an attorney, and a correctional officer. Briefly stated, it was the opinion of these witnesses that Moore was fit to stand trial. The defense countered with three attorneys, a social worker, a pastor and two medical experts. These witnesses presented evidence that Moore was not psychologically fit for trial. At the conclusion of the hearing, the jury ruled that Moore was psychologically fit to stand trial.

Following the fitness hearing, Moore told the trial court that he wanted to dismiss the public defender's office. The trial judge warned Moore of the seriousness of the offenses charged against him. Moore was then unsure of whether he wanted to proceed *pro se* or whether he wanted to be represented by counsel, stating that "It's impossible for me to defend myself."

On April 4, 1984, the public defender presented a motion to withdraw as Moore's counsel. The trial court ruled that Moore could proceed *pro se* if he desired but that a public defender would be at Moore's table should Moore require any assistance throughout the trial. If a conflict arose, the trial judge would follow Moore's wishes. In addition, the trial judge ordered Moore to undergo an examination on the issue of sanity.

On April 12, 1984, Moore changed his mind regarding his representation. Moore stated that he did not want to represent himself and that "It is impossible for me to defend myself." That being the case, the trial court continued the case in order to allow Moore to obtain an attorney.

Soon thereafter, another attorney filed his appearance on behalf of Moore. Subsequently, on May 17, 1984, however, Moore informed the trial court that he wanted to be represented by counsel but was not satisfied with any of the attorneys currently handling his case. When asked whom he desired to have named as his attorney, Moore was silent. Because a clear waiver of counsel had not been made by Moore, the trial court ruled that Moore had to be represented by counsel.

On May 21, 1984, Moore again asked for a new attorney. The attorney requested by Moore, however, was unavailable.

Moore's attorney then requested a new fitness hearing. Moore, however, objected to the new fitness hearing and claimed that the

jury had already decided the issue. In addition, Moore claimed that he wanted to represent himself. The trial court denied Moore's request to proceed *pro se* after surmising that Moore was merely engaging in a delay tactic.

At Moore's trial, several witnesses testified that Moore was the person who shot and killed Gentile and Piszczor. A medical witness testified as to the cause of death. In addition, the prosecution presented the testimony of Dr. James Cavanaugh, a psychiatrist, and Dr. Warner Tuteur, a psychiatrist. According to these experts, Moore was "sane but extremely paranoid." The two experts based their finding on personal interviews with Moore, on the results of several psychological tests, and on interviews with persons who knew of Moore and his background.

At the close of the prosecution's case, Moore again requested to represent himself. The trial court entertained Moore's arguments and noted that Moore had engaged in a pattern of hiring and firing attorneys. The trial court reminded Moore that he had previously asked Moore many times if he wanted to proceed *pro se* and that Moore had repeatedly turned down the court's inquiries. The trial court further noted the seriousness of the offenses charged and that Moore had never given an appropriate waiver of counsel. Accordingly, the trial judge determined that Moore had to be represented by counsel. Moore and his attorney then presented the defense's case in chief.

Moore's theory in defense was that he was insane at the time of the murders. In support of his theory, Moore presented the testimony of Dr. Henry G. Conroe, a psychiatrist; Dr. Leo Goldman, a psychiatrist; Dr. Cynthia Kegel, a clinical psychologist; Dr. Donald Paull, a clinical psychologist; and several lay witnesses.

According to these physicians, Moore was suffering from "paranoia psychosis with a delusion or fixed belief in a conspiracy against him within the judicial system which he felt was tainted with satanic influences." These experts opined that Moore was insane at the time of the shooting and that he did not think he was doing anything morally wrong. The experts further stated that Moore was unable to conform his conduct to the requirements of the law.

The lay witnesses who testified on Moore's behalf explained how Moore's problems began after an accidental shooting which left Moore disabled. These witnesses believed that Moore was insane at the time of the shooting.

After the close of all the evidence, the jury found Moore guilty of two counts of murder. Moore now brings this appeal.

Opinion

# I

Moore first contends that he was not fit to stand trial. Moore contends that his lack of fitness is demonstrated by his alleged inability to cooperate with his attorney.

 The applicable test of whether an accused is fit to stand trial is his ability to understand the nature of the proceeding and to cooperate with counsel. (*People v. Chambers* (1976), 36 Ill. App. 3d 838, 345 N.E.2d 119; Ill. Rev. Stat. 1983, ch. 38, par. 104—10.) A defendant is presumed to be fit to stand trial unless the trial court is presented with facts raising a *bona fide* doubt as to the defendant's psychological fitness. (*People v. Logan* (1977), 50 Ill. App. 3d 460, 365 N.E.2d 304.) An individual is fit to stand trial even though he is mentally disturbed or defective and requires psychological treatment. (*People v. Gibson* (1974), 21 Ill. App. 3d 692, 315 N.E.2d 557.) In addition, a defendant's unwillingness to cooperate with counsel cannot be deemed equivalent with his inability to do so. (*People v. O'Neal* (1978), 62 Ill. App. 3d 146, 379 N.E.2d 12.) Once the issue of fitness is raised by a defendant, the burden is on the prosecution to establish by a preponderance of the evidence that the defendant is fit to stand trial. (*People v. Wells* (1975), 30 Ill. App. 3d 968, 333 N.E.2d 496.) Finally, a trial court's determination regarding a defendant's fitness to stand trial will not be overturned unless an abuse of discretion is present. *People v. Bivins* (1981), 97 Ill. App. 3d 386, 422 N.E.2d 1044.

 In the case at bar, the trial court, pursuant to section 104—12 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 104—12), permitted a jury to determine whether Moore was fit to stand trial. The jury heard all of the experts and witnesses testifying on Moore's behalf, heard the prosecution's experts and witnesses, and viewed Moore's character and demeanor. After studying all of this evidence, the jury found that Moore was indeed fit to stand trial. As acknowledged by Moore in his appellate brief, "[T]he fitness hearing was a credibility contest between the prosecution and defense expert witnesses." The jury found the prosecution's witnesses to be more credible and we cannot find error in such a determination. Thus, we must reject Moore's claim that he was unfit to stand trial.

# II

Moore's second argument is that the trial court denied Moore the right to represent himself and that in so doing, the trial court violated

the principles set forth in *Faretta v. California* (1975), 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525.

■▉ ■ In *Faretta*, the Supreme Court held that a defendant has the right, under the sixth amendment, to waive his right to assistance of counsel and represent himself if he so chooses. If a court forces a defendant to accept assistance of counsel against the defendant's wishes, the defendant's constitutional rights are violated. (422 U.S. 806, 816, 45 L. Ed. 2d 562, 571, 95 S. Ct. 2525, 2531-32.) However, in order to properly grant a defendant's request to waive his constitutional right to assistance of counsel, a trial court must first find that the defendant is doing so knowingly and intelligently. (*People v. Johnson* (1984), 123 Ill. App. 3d 128, 462 N.E.2d 930.) On review, a finding that a defendant waived his right to counsel will not be lightly made (*People v. McMurray* (1977), 55 Ill. App. 3d 581, 371 N.E.2d 46) and the record must demonstrate that the defendant intelligently relinquished a known right or privilege. *People v. Vanderwerff* (1978), 57 Ill. App. 3d 44, 372 N.E.2d 1014.

■ In the present case, a review of the record reveals that the trial court on numerous occasions interviewed Moore as to his desire to represent himself. At times, Moore demanded to proceed *pro se*; at other times, his attitude was the opposite. Essentially, Moore was at best uncertain regarding his *pro se* status. On one occasion, for example, the following discussion occurred:

> "THE COURT: I do not think anyone facing a trial of this nature should do so on a *pro se* basis, even somebody who has a reputation for being a very good jailhouse lawyer.
>
> MOORE: It's impossible for me to defend myself."

Later in the proceedings, when the trial court asked Moore whether he wanted to represent himself, Moore again stated: "No, sir. It is impossible for me to defend myself."

Under these circumstances, we believe it is evident that Moore did not knowingly and intelligently waive his right to counsel. Consequently, we reject Moore's claim that his rights under *Faretta* were violated.

### III

Moore's third assignment of error is that a reasonable doubt exists as to whether he was sane at the time he committed the two murders. Moore contends that the nature of the crime, the contrast between his life history and the murder, and the expert testimony presented on his behalf reveal clearly that he was insane at the time of the murders.

■■ ■ The question of whether a defendant was sane at the time of an offense is for the jury and its decision will not be reversed unless that decision is so improbable or unsatisfactory as to create a reasonable doubt as to the defendant's sanity. (*People v. Silagy* (1984), 101 Ill. 2d 147, 461 N.E.2d 415.) Discrepancies in testimony are matters for the jury's determination and the jury is free to disregard an expert's conclusions of fact. (*People v. Grice* (1984), 121 Ill. App. 3d 567, 459 N.E.2d 1122.) The jury may reject expert testimony and base its findings on lay testimony (*People v. Spears* (1978), 63 Ill. App. 3d 510, 380 N.E.2d 423), or it may accept one expert's opinion over that of another. *People v. Clark* (1981), 102 Ill. App. 3d 414, 429 N.E.2d 1255.

■■ In the case at bar, both the prosecution and the defense presented expert witnesses on the issue of Moore's ability to appreciate the criminality of his conduct and his ability to conform his conduct to the requirements of the law. Numerous lay witnesses also testified as to Moore's general personality as well as his conduct before, during and after the murder incident. The evidence presented was conflicting and contradictory, with both sides urging the jury to accept their view. This case, therefore, is typical of those instances where a jury is presented with two opposite conclusions, both drawn from an analysis of a single event but of which only one can be true.

After the evidence was presented, the jury agreed with the prosecution that Moore was sane at the time of the murders. Based on the record before us, we cannot say that the jury's decision mandates reversal. Accord *People v. Clark* (1981), 102 Ill. App. 3d 414, 429 N.E.2d 1255.

## IV

■■ ■ Moore's next argument is that the prosecution misstated the law during closing argument. The prosecution argued that Moore's experts had testified that he was suffering from "selective insanity"; that Moore was insane at the time of the murders, but was sane at all other times. This argument, according to Moore, unduly prejudiced the jury and interfered with Moore's right to a fair trial.

Moore's arguments on this point must fail for at least two reasons. First, Moore failed to object to the prosecution's remarks. It is axiomatic that to preserve an issue for review, an objection at trial must be made. (*People v. Grayson* (1980), 89 Ill. App. 3d 766, 411 N.E.2d 1177.) Moore failed to object and thereby waived those complaints he now raises. Secondly, the prosecution's remarks were fair inferences from the evidence presented. Moore's experts did indeed

testify that Moore was completely sane regarding most aspects of his life but that he suffered "paranoid delusions" with regard to certain areas, including the legal system. Through its argument, the prosecution did not attempt to misstate the law; rather, the prosecution merely attacked the defense's theory. Based on the testimony presented by Moore's experts, this argument was an inference that could reasonably be drawn from the record and was therefore not improper.

## V

■■ Moore's final contention is that the trial court erred in restricting the scope of surrebuttal testimony to be offered by two expert witnesses. Moore claims that the prosecution's expert found Moore to be sane based on the results of several psychological tests. During surrebuttal, Moore asserts he was prevented from having his experts impeach the credibility of those test results.

A review of the record, however, reveals that one of Moore's experts was permitted to freely testify as to the results produced by the psychological tests at issue. Dr. Lipsett, one of Moore's surrebuttal experts, testified at great length about the accuracy of the tests, Moore's results, and the import of those results regarding Moore's sanity. Although the testimony of Moore's other expert was restricted by the trial court, we believe that the trial court acted within its discretion. (*People v. Driver* (1978), 62 Ill. App. 3d 847, 379 N.E.2d 840.) That being the case, we do not believe that Moore was unduly prejudiced by the trial court's decision to restrict the scope of the expert's testimony.

CONCLUSION

Accordingly, for the reasons set forth above, we affirm the decision of the circuit court of Cook County.

Affirmed.

JOHNSON and JIGANTI, JJ., concur.