THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MICHAEL CHAMBERS, Defendant-Appellant.

Second District    No. 2—92—0597

Opinion filed March 24, 1994.—Rehearing denied April 27, 1994.

G. Joseph Weller and Barbara R. Paschen, both of State Appellate
Defender's Office, of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers, Robert
J. Biderman, and Linda Susan McClain, all of State's Attorneys Appellate
Prosecutor's Office, of counsel), for the People.

· PRESIDING JUSTICE INGLIS delivered the opinion of the court:
Defendant, Michael Chambers, was convicted of first-degree mur-
der (Ill. Rev. Stat. 1991, ch. 38, par. 9—1(a)(1) (now 720 ILCS 5/9—
1(a)(1) (West 1992))) after a jury trial in the circuit court of Winne-
bago County. He was sentenced to life in prison, and he appeals.
Defendant raises five contentions in this court: (1) he was denied the
effective assistance of counsel when his attorney did not block the
admission of evidence regarding his criminal background; (2) evi-
dence of the victim's blood-alcohol content should have been
admitted; (3) a jury instruction on second-degree murder should have
been given; (4) the prosecutor's closing argument denied defendant a
fair trial; and (5) the trial court's ruling that there was no *bona fide*
doubt of the defendant's fitness to proceed to sentencing was error.
We address only the first issue and find that a new trial is required.
Defendant stabbed his girlfriend to death while they were riding

home in a car driven by defendant's friend following a night of drinking. After visiting a few bars and drinking mixed drinks and shots of a fortified peppermint schnapps, defendant and his girlfriend, Beverly Adams, decided to head home. Defendant drove Beverly's car and stopped on the way at the home of his friend, Michael Gardner, to see if he could obtain some marijuana. Defendant went into the home at about 1 a.m., while Beverly slept in the front seat of the car.

Defendant and Gardner exited the house and Gardner drove the car. He handed some marijuana to defendant, who was in the backseat, and defendant rolled a joint. Gardner and defendant smoked the joint. While Gardner was driving, Beverly awoke and began to yell at defendant because Gardner was driving her car and because she said that Gardner had touched her inappropriately. Defendant slapped Beverly and she told defendant that if he hit her again, she would kick him out of the apartment they shared. The two began to fight and defendant pulled Beverly into the backseat with him. He stabbed her numerous times in the neck and back.

When the car arrived at defendant's apartment, the two men carried Beverly inside. Defendant immediately went into the apartment's bathroom and began to change his clothes. Gardner told defendant that Beverly, who was very bloody and was having trouble breathing, had to go to the hospital. Defendant came out of the bathroom and poked Beverly with his foot, apparently to stir her. He then told Gardner to take her to the hospital. Gardner did. Beverly died a short time later. Defendant was arrested later that day.

At trial, defendant presented the defense of insanity. Dr. Frank Cushing, a clinical psychologist, testified for defendant. Dr. Cushing stated that defendant was drug and alcohol dependent, that he suffered from a residual attention deficit hyperactive disorder, and that he had an anti-social personality, a narcissistic personality, and an unspecified personality disorder with sadistic traits. In Dr. Cushing's opinion, defendant's intoxication combined with his disorders rendered him unable to form the intent to kill or act knowingly at the time of the murder. Dr. Cushing based his opinion on a review of documents, including previous psychological reports, police reports and witness statements, and interviews with defendant and his mother.

Dr. Roy Schenk, a biochemist, testified for the defense regarding the factors affecting blood-alcohol levels. He opined that defendant's blood-alcohol level could have been between .25 and .35 at the time of the murder, depending on his rate of metabolizing alcohol. Dr. Schenk did not talk with defendant, but made calculations based on information supplied to him by defense counsel regarding the extent of defendant's drinking on the day and night of the murder.

Dr. David Levine, a psychiatrist, testified for the prosecution. He opined that defendant was capable of reasoning and exerting judgment at the time of the crime. Dr. Levine interviewed defendant and reviewed arrest reports made in the case. Defendant told Dr. Levine about his criminal history. Dr. Levine testified from his report:

"Summarizing my report, essentially, Mr. Chambers told me he had a long history of criminal activities since approximately the age of 12; that at that time, he was arrested for aggravated arson, but said that the charges were dropped. And he explained that he was smoking in a community center and that is what the incident had been about really. He said that he had 7 traffic tickets for moving violations. He stated that he was arrested for burglary but that the charges were dropped. He also told me about a series of he stated 33 counts of armed robbery with a gun. And that those robberies were against movie theaters in Rockford over a two to three months period. And he stated that he netted approximately a $116,000 during that time. He at that point told me about—I believe we talked about his use of a weapon, and he said that he has used a weapon both offensively and defensively but went into more detail about defensive use of a weapon but did say when he would raid drug houses, it was essentially to rob them; that he would brandish a gun essentially to scare people into just turning over I believe money, maybe drugs as well, at that point.

He states that he was arrested for—he states that he was arrested for attempted murder and explained that he had used the handle of a meat cleaver, not the knife itself, but the handle to defend himself against a friend who was drunk and who was abusive. He said it was self-defense. However, he was arrested for that. I believe he served four out of the six year sentence for attempted murder. In 1985 he told me he was arrested for residential burglary, which carried a sentence of ten years but that the charges were reduced and he was paroled.

He also said that he was arrested for aggravated battery and that was when he hit his grandmother he explained accidentally, but the police I think chose to charge him. His grandmother was not pressing charges. The police chose to charge him with I think aggravated battery."

Prior to trial, the court barred the admission of defendant's previous armed robbery conviction and ruled that defendant's prior burglary and attempt (murder) convictions were admissible for impeachment. Dr. Levine's testimony thus put before the jury a significant amount of criminal history that would otherwise have been excluded.

Defendant argues that he was denied the effective assistance of counsel because his trial counsel did not object to the lengthy and detailed testimony of Dr. Levine concerning defendant's criminal past. Defendant contends that such detail was not required to establish a solid basis for Dr. Levine's opinion and that the testimony was unduly prejudicial. The State argues that the testimony was admissible as forming the basis for Dr. Levine's expert opinion that defendant was capable of reasoning and judgment at the time of the murder. The State further asserts that defendant failed to show prejudice, as is required to establish ineffective assistance of counsel.

"Evidence of other crimes is admissible if it is relevant to establish any fact material to the prosecution." (*People v. Stewart* (1984), 105 Ill. 2d 22, 62.) However, when other crimes evidence is offered, the trial court must weigh its probative value against the prejudicial effect it may have on the defendant. (*Stewart*, 105 Ill. 2d at 62.) Even when other crimes evidence is otherwise admissible, it must be rejected when its prejudicial effect clearly outweighs its probative value. (*People v. Musitief* (1990), 201 Ill. App. 3d 872, 877.) The admissibility of other crimes evidence is within the sound discretion of the trial court. (*People v. Barnes* (1983), 117 Ill. App. 3d 965, 978.) Our supreme court has considered the admissibility of other crimes evidence in a case involving an insanity defense:

> "Almost every aspect in a defendant's life is relevant when the defense of insanity is raised. [Citation.] The admission of prior violent acts by the defendant is therefore not necessarily precluded. [Citation.] However, *relevancy* remains a prerequisite for the admission of any evidence." (Emphasis in original.) *People v. Buggs* (1986), 112 Ill. 2d 284, 290.

An expert testifying on the issue of sanity in a criminal case may disclose the contents of materials he reasonably relied upon in reaching his opinion, in order to explain the basis of his opinion. (*People v. Anderson* (1986), 113 Ill. 2d 1, 9.) The expert may also repeat statements made to him by the defendant if those statements are relevant to explaining his opinion to the jury. *Anderson*, 113 Ill. 2d at 13.

The key issues are whether a detailed recital of defendant's criminal past was relevant to the basis of Dr. Levine's testimony and whether the probative value of the evidence outweighed its prejudicial effect.

We believe that the detailed evidence of defendant's past criminal conduct was only marginally relevant to the sanity dispute at trial. Scrutiny of Dr. Levine's entire testimony reveals that the evidence of defendant's prior criminal acts bore mainly on whether de-

fendant possessed a violent personality. A defense expert agreed that defendant suffered from various personality disorders. In contrast, the sanity dispute turned on whether defendant's intoxication at the time of the murder, coupled with his personality disorder or disorders, rendered him incapable of forming the requisite criminal intent when the crime occurred. The prosecution recognized this because Dr. Levine testified at length about examples of goal-directed behavior by defendant near the time of the crime that belied a claim of intoxication. Defendant's prior criminal conduct was not directly relevant to the issue of intoxication, especially given the expert consensus on defendant's general psychiatric condition. The trial judge essentially allowed Dr. Levine to offer generally inadmissible evidence, containing a high risk of unfair prejudice, to shore up a conclusion that was not disputed. For example, evidence of defendant's arrest at age 12 for arson and his many armed robberies of theaters and drug houses was not at all relevant to whether defendant was capable of forming the requisite criminal intent at the time of the murder.

Further, we believe the prejudicial effect of the evidence outweighed its probative value and that the trial court abused its discretion in admitting it, especially in detailed form. Generally, "evidence must be purged of references to other crimes if it is at all possible to do so without doing violence to the probative value of the evidence." (*People v. Bailey* (1980), 88 Ill. App. 3d 416, 420; see also *People v. Kimbrough* (1985), 138 Ill. App. 3d 481, 489.) This is because evidence of other crimes, if not admitted to show something other than a propensity to commit crimes, could well result in the jury convicting the defendant merely because it feels the defendant is a bad person deserving of punishment. *People v. Lindgren* (1980), 79 Ill. 2d 129, 137.

The evidence of defendant's other crimes likely overpersuaded the jury to convict him of murder. Defendant has an extensive criminal past. Moreover, a number of offenses or acts were discussed in detail. Dr. Levine could have testified in a more general sense about defendant's prior crimes and still have established credibility with the jury as to defendant's personality disorder or disorders.

*People v. Vanda* (1982), 111 Ill. App. 3d 551, is not to the contrary. There, the court found no error in allowing the State to cross-examine the defense's insanity expert about a previous murder committed by the defendant as to which he successfully employed the insanity defense at trial. (*Vanda*, 111 Ill. App. 3d at 559-61.) The information was relevant to the basis of the expert's diagnosis and the issue of insanity. (*Vanda*, 111 Ill. App. 3d at 560.) However, the

court emphasized that the references to the prior murder were "fleeting" and "limited." (*Vanda*, 111 Ill. App. 3d at 561.) Here, the evidence of defendant's criminal past was substantial and detailed. Moreover, we do not agree with the *Vanda* court's statement that the defendant could not object to the admission of other crimes evidence because the disputed issue was sanity, not whether the defendant actually committed the murder for which he was on trial. (*Vanda*, 111 Ill. App. 3d at 560-61.) A jury tainted by evidence of other crimes could just as easily, and unfairly, reject an insanity defense based on its belief that the defendant is an evil person as it could reject the defendant's claim of innocence. The danger that the jury will convict based on unduly prejudicial evidence is the same regardless of whether innocence or insanity is in dispute.

Our supreme court has cautioned that care needs to be taken when experts reveal the contents of materials upon which they rely in reaching their opinions. The court stated, "A trial judge, of course, need not allow the expert to recite secondhand information when its probative value in explaining the expert's opinion pales beside its likely prejudicial impact or its tendency to create confusion." *Anderson*, 113 Ill. 2d at 12.

The trial judge in this case should not have allowed Dr. Levine to detail defendant's criminal past in light of the prejudicial impact of the evidence and its marginal value to the crux of the experts' disagreement. The error requires reversal. In *People v. Lindgren* (1980), 79 Ill. 2d 129, 140, our supreme court stated, "The erroneous admission of evidence of other crimes carries a high risk of prejudice and ordinarily calls for reversal." (See also *People v. Pelate* (1977), 49 Ill. App. 3d 11, 19-20 (admission of evidence that defendant kidnapped teenager during flight after prison escape was prejudicial error in prosecution for escape).) In a case in which other crimes evidence is erroneously admitted, the conviction should only be upheld where the properly admitted evidence is so overwhelming that no fairminded jury could have voted for acquittal. (*Lindgren*, 79 Ill. 2d at 141.) The evidence pertaining to defendant's sanity at the time of the crime was not so one-sided that we can confidently say that the above test is met. Defendant is entitled to a new trial.

We hold that the admission of the other crimes evidence in this case was plain error. (See 134 Ill. 2d R. 615(a); *People v. Garcia* (1992), 231 Ill. App. 3d 460, 472.) Consequently, we need not decide whether defendant was denied the effective assistance of counsel. Having determined that the evidence was improperly admitted and that defendant was unduly prejudiced thereby, the result is the same regardless of whether we find that defense counsel was ineffective for

failing to keep the evidence out. Neither must we address defendant's other contentions of error.

For the above reasons, the judgment of the circuit court of Winnebago County is reversed, and this cause is remanded for a new trial.

Reversed and remanded.

McLAREN and GEIGER, JJ., concur.