THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GREGORY McMILLEN, Defendant-Appellant.

First District (2nd Division)   No. 1—95—2696

Opinion filed June 4, 1996.

Rita A. Fry, Public Defender, of Chicago (Kim L. Sorrells, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and James S. Beligratis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SCARIANO delivered the opinion of the court:

On June 26, 1992, while incarcerated in Cook County jail awaiting sentencing on a burglary charge, Gregory McMillen (defendant) confessed to the murder of three women: Lollicy Vivirit, who is referred to as the victim in this opinion, Vivian Bramlet, and Tania Davis.

Detective Michael Kill of the Chicago police department testified at trial that on June 24, 1992, he learned that defendant's cellmate telephoned the police to inform them that, at defendant's request, he called to let them know that his cellmate wanted to discuss certain murders he had committed. An interview with defendant was arranged, and after receiving his *Miranda* warnings, he signed various forms wherein he waived his right to an attorney and in which he stated that he was awaiting sentencing on a charge of burglary, that he agreed to cooperate truthfully with the State's Attorney's office, and he acknowledged that, in return, the State agreed to bring his cooperation to the attention of the court where his burglary case was pending.

Regarding the murder at issue, Kill stated that defendant confessed that in March 1984, at 7200 South Dorchester in Chicago, he met a young girl while she was walking to school, and she was wearing a tan jacket. In his confession, defendant stated that the victim was a sophomore at South Shore High School who lived at 6800 South Dorchester and who wanted to go to college to be a nurse; defendant thought she was 16 or 17 years old. He claimed that they became romantically involved after they had gone to a restaurant for breakfast, and since he did not have money for a motel, he took her to an abandoned building on the northwest corner of 72nd and Bennett, where they went into the basement and engaged in sexual intercourse, during which he became violent and grabbed a small chain from the floor and strangled her until he believed she was dead.

He then dragged her body to the corner of the basement and partially covered it with a couch. As he was turning to leave, he heard her moan, so he picked up a piece of masonry with which he

struck her on the skull. He told Kill that he took off his shirt because it was covered with blood, and then left the building, taking the victim's jacket with him. On one occasion, he returned to the scene and noticed that her remains were still there, and although he went back to the building several times thereafter, he did not go inside.

After he confessed, defendant identified the victim from her photo. Kill subsequently learned that she lived at 68th and Dorchester, was a sophomore at South Shore High School, disappeared on March 14, 1984, and that she fit the physical description of the body found at 1858 East 72nd Street. Defendant's signed confession was published to the jury.

Notwithstanding defendant's claim that he was insane at the time he killed the victim, the jury found him guilty of murder and the trial court sentenced him to life imprisonment. This appeal followed.

■ After defendant raised a question as to whether he was fit for trial, two hearings to determine that issue were held. Under the law, a defendant is presumed to be fit for trial, but is unfit, "if, because of his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense." 725 ILCS 5/104—10 (West 1992). "An individual is fit to stand trial even though he is mentally disturbed or defective and requires psychological treatment." *People v. Moore*, 159 Ill. App. 3d 850, 855, 513 N.E.2d 24 (1987), *appeal denied*, 117 Ill. 2d 550, 517 N.E.2d 1092 (1987). Generally, "[w]hen a bona fide doubt of the defendant's fitness [for trial] has been raised, the burden of proving that the defendant is fit by a preponderance of the evidence and the burden of going forward with the evidence are on the State." 725 ILCS 5/104—11(c)(West 1992). It is well established that "[t]he credibility and weight to be given psychiatric testimony are for the trier of fact," and the ultimate issue as to fitness is for the trial court, and not the experts. *People v. Bilyew*, 73 Ill. 2d 294, 302, 383 N.E.2d 212 (1978). Further, the trial court's finding will not be reversed on appeal unless the judge clearly abused his discretion. *People v. Brown*, 252 Ill. App. 3d 377, 382, 625 N.E.2d 100 (1993).

In the case at bar, Dr. Henry Conroe, testifying on behalf of defendant, opined that he was not fit for trial because he suffered from factitious disorder with psychological symptoms, and although he understood the role of his attorney, the State's Attorney, and the judge, he could not cooperate with his attorney because he was unable to distinguish fact from fantasy. In contrast, Dr. Albert Stipes testified for the State that regardless of whether defendant was malingering or suffered factitious disorder, he was fit for trial and

was "aware of what's going on and can control his behavior." Dr. John Murray, also testifying for the State, opined that defendant was fit for trial and that he was malingering. Because there existed ample credible evidence that defendant was fit for trial, and because it is for the trial court to determine the credibility of conflicting psychiatric testimony, we conclude it was not an abuse of discretion to hold that defendant was fit for trial.

■ Before trial, defendant notified the court that he intended to assert that he was not guilty, invoking the defense of insanity. "A person is not criminally responsible for [his] conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." 720 ILCS 5/6—2(a)(West 1992). The burden is on the defendant to prove by a preponderance of the evidence that he is legally insane. *People v. Johnson*, 146 Ill. 2d 109, 128, 585 N.E.2d 78 (1991), *cert. denied*, 506 U.S. 834, 121 L. Ed. 2d 65, 113 S. Ct. 106 (1992).

■ Defendant alleges that his right to a fair trial was violated because, while presenting its case against him, the State elicited highly prejudicial evidence of other crimes he allegedly committed. The State contends that this issue is waived because defendant failed to raise it in his post-trial motion with specificity, citing *People v. Towns*, 157 Ill. 2d 90, 100, 623 N.E.2d 269 (1993) (in order to preserve an issue for appeal, it must be both objected to at the time of the alleged error and set out with specificity in a post-trial motion), *cert. denied*, 511 U.S. 1115, 128 L. Ed. 2d 678, 114 S. Ct. 2122 (1994), and *People v. Ayala*, 208 Ill. App. 3d 586, 594-95, 567 N.E.2d 450 (1990). However, to ameliorate the severity of the waiver rule, Supreme Court Rule 615(a) (134 Ill. 2d R. 615 (a)) allows the reviewing court to consider " 'an error which deprived the defendant of a fair and impartial trial or any substantial error which occurs in cases where the evidence is closely balanced.' " *People v. Gonzalez*, 238 Ill. App. 3d 303, 314, 606 N.E.2d 304 (1992), quoting *People v. Schmidt*, 168 Ill. App. 3d 873, 878, 522 N.E.2d 1317 (1988), *appeal denied*, 122 Ill. 2d 589, 530 N.E.2d 259 (1988). We believe that this is a case in which the rule should be invoked.

Defendant specifically argues that evidence which the State elicited regarding a burglary, his confession to the murder of Tania Davis, and his confession to the murder of Vivian Bramlet should not have been admitted and constitutes reversible error. We agree.

■ The supreme court has stated:

"Relevant other-crimes evidence is admissible in the trial court's discretion to show *modus operandi*, a common design or plan,

intent, motive, identity, knowledge, or the absence of mistake [citation] or as evidence of defendant's state of mind in rebuttal of a defense of insanity [citation]. Conversely phrased, other-crimes evidence is admissible, if relevant and not unduly prejudicial, to show anything other than a defendant's mere propensity to commit a crime. [Citations.]" *People v. Cloutier*, 156 Ill. 2d 483, 505, 622 N.E.2d 774 (1993), *cert. denied*, 510 U.S. 1200, 127 L. Ed. 2d 665, 114 S. Ct. 1315 (1994).

Admission of a defendant's prior criminal activity is generally inadmissible and is a matter within the trial court's discretion which will not be disturbed absent an abuse of discretion. *People v. Enis*, 163 Ill. 2d 367, 388, 645 N.E.2d 856 (1994), *cert. denied*, 516 U.S. 827, 133 L. Ed. 2d 50, 116 S. Ct. 94 (1995).

During the State's presentation of its case, Kill and Assistant State's Attorney Mike Rogers testified, over defendant's objection, to highly prejudicial details from defendant's confession to the Bramlet homicide. For example, defendant told Rogers that in June 1986, Bramlet, who was his girlfriend at the time, stole eight bags of cocaine which he had set aside. Rogers testified that defendant told him that he took her over to the train tracks on 72nd Street and accused her of stealing the cocaine, that after she denied it, he pulled off her shoe and saw the bags of cocaine; that when she told him she intended to sell it, he said that he called her a liar, punched her eight or nine times, and, according to Kill's testimony, "[s]he was down on the ground and he punched her, as he put it, as hard as he could, so hard that he saw blood coming out of her shorts."

After leaving the area, he returned, and when he saw her trying to get up, she asked defendant not to kill her. Defendant told Rogers that he picked up a large rock or boulder and "smashed her head in." He took Bramlet's coat, "stashed it," and, upon arriving at her house, told her family that he did not know where she was. He explained to Rogers that "he would lead motorcades looking for Vivian Bramlet, giving people the impression that he was looking for her" even though he knew her body was lying along the railroad tracks. He also confessed that he lied to the police before and after her body was found.

The State's closing statement, the disputed portion of which we set forth as it appears in the transcript of proceedings, further highlighted defendant's confession to the murder of Bramlet:

"He took off his shirt because it had Lollicy Vivirit's blood and took her coat. And what happened? What did he do with her coat? He gave it to his girlfriend. He gave it to his girlfriend Vivian Bramlet. And we know what happened to Vivian.

* * *

Well, you heard evidence as to the defendant of Vivian Bramlet two years after the actions in which he did to Miss Vivirit. According to the defense, two years into, when he would be worse and you know what his state of mind was then and his consciousness of guilt. He goes back and he smashes that girl's head in because he doesn't want her to talk. He leaves, he goes and lies to the police. Consciousness of guilt ladies and gentlemen."

The State argues that evidence of the other crimes was properly admitted, citing *People v. Glenn*, 233 Ill. App. 3d 666, 683, 599 N.E.2d 1220 (1992), *appeal denied*, 147 Ill. 2d 631, 606 N.E.2d 1230 (1992) (When the insanity of a defendant is at issue, "practically every event in a defendant's life is relevant *** including the defendant's criminal history"). But in *Glenn*, the murder at issue was "closely connected" to another murder because the victims were boyfriend and girlfriend, they were killed with the same weapon, and within a short period of time. *Glenn*, 233 Ill. App. 3d at 682. The instant case is easily distinguishable from *Glenn* in light of the fact that there is no connection whatsoever between the Bramlet homicide and the victim's death.

The State claims that the other crimes evidence was properly admitted to explain the circumstances surrounding defendant's confession to the instant crime and was relevant to the issue of defendant's consciousness of guilt and state of mind, all of which were placed in issue by his insanity defense. For example, Dr. Albert Stone, who testified for defendant, opined that defendant suffered from severe mental illness in 1986 and 1992, the year the Bramlet murder took place and the year of defendant's confession of it to the police, respectively. The State further argues that the evidence showed that defendant concealed Bramlet's clothing and attempted to mislead her family and police for several years, thus illustrating that he appreciated the criminality of his actions.

■ Regardless, we find the State's contention that it was permissible to elicit the details of this other murder to be unconvincing in light of the fact that the State presented the evidence prior to defendant's presentation of his defense. In oral argument in this court, the State admitted, as it must in all prosecutions, that it had the burden of proving defendant guilty, and it conceded, again, as it must, that defendant was not required to present any defense at all. Because the State brought out the disputed evidence regarding the Bramlet murder, defendant, in effect, was forced into a position of having to introduce evidence of his insanity, both at the time of the murder at issue and two years later, when Bramlet was murdered.

But whether this evidence was presented in the State's case in chief or on rebuttal, we also believe that the details narrated to the jury were more prejudicial than probative and denied defendant his right to a fair trial no matter at what stage they were presented.[1] In *People v. Chambers*, 259 Ill. App. 3d 631, 631 N.E.2d 817 (1994), *appeal denied*, 157 Ill. 2d 509, 642 N.E.2d 1289 (1994), the defendant, who was pleading insanity regarding the murder of his girlfriend, argued that he was denied a fair trial because evidence of other crimes was improperly admitted. In testifying for the State, a psychiatrist revealed that the defendant's past criminal history included aggravated arson, burglary, armed robbery, aggravated battery, and attempted murder. *Chambers*, 259 Ill. App. 3d at 633. Although this court acknowledged that almost every aspect of a defendant's life is relevant when the insanity defense is raised, evidence of past criminal conduct, the court adjudged, should be "relevant to the sanity dispute at trial" and the probative value should outweigh its prejudicial value. *Chambers*, 259 Ill. App. 3d at 634.

In invoking plain error and reversing the trial court, the *Chambers* court held that the detailed evidence of the defendant's past criminal history was "only marginally relevant to the sanity dispute at trial" because the issue turned on whether the defendant's intoxication at the time of the murder, coupled with his personality disorder, rendered him incapable of forming the requisite intent when the crime occurred. *Chambers*, 259 Ill. App. 3d at 634-36.[2] Also, the detailed evidence of other crimes was considered by the appellate court to be more prejudicial than probative, citing *People v. Bailey*, 88 Ill. App. 3d 416, 420, 410 N.E.2d 545 (1980), and *People v Kimbrough*, 138 Ill. App. 3d 481, 489, 485 N.E.2d 1292 (1985), for the proposition that " 'evidence must be purged of references to other crimes if it is at all possible to do so without doing violence to the probative value of the evidence.' " *Chambers*, 259 Ill. App. 3d at 635, quoting *Bailey*, 88 Ill. App. 3d at 420. We agree with *Chambers* that it is imperative to purge evidence of other crimes in the type of case it had under consideration because of the danger that a jury could convict the defendant "merely because it feels [he] is a bad

---

[1]Of course, if defendant had opened the door by introducing a disputed issue as to his sanity at the time of the Bramlet murder, the State would have been justified in eliciting evidence to dispute defendant's position. See *Chambers*, 259 Ill. App. 3d 631, 631 N.E.2d 817.

[2]For example, the defendant in *Chambers* was arrested at a much younger age for arson and his many armed robberies were held to be "not at all relevant to whether defendant was capable of forming the requisite criminal intent at the time of the murder." *Chambers*, 259 Ill. App. 3d at 634-36.

person deserving of punishment." *Chambers*, 259 Ill. App. 3d at 635, citing *People v. Lindgren*, 79 Ill. 2d 129, 137, 402 N.E.2d 238 (1980).

We therefore hold that this case should be reversed and remanded for a new trial. When reference to the Bramlet murder is combined with evidence of a burglary and defendant's confession to the murder of Tania Davis, there is no escaping the possibility that "[a] jury tainted by evidence of other crimes could just as easily, and unfairly, reject an insanity defense based on its belief that the defendant is an evil person as it could reject the defendant's claim of innocence." *Chambers*, 259 Ill. App. 3d at 636. We are mindful that "[i]n a case in which other crimes evidence is erroneously admitted, the conviction should only be upheld where the properly admitted evidence is so overwhelming that no fair-minded jury could have voted for acquittal." *Chambers*, 259 Ill. App. 3d at 636. Although we find that the evidence necessarily points to the fact that defendant killed the victim, the expert testimony supporting his insanity and his long history of mental illness lead us to believe that the evidence is not so overwhelming that he was sane when he killed the victim. Accordingly, because a fair-minded jury could have found defendant not guilty by reason of insanity, we hold that this case must be reversed and remanded for a new trial.

For all of the foregoing reasons, the judgment of the circuit court is reversed and the case is remanded for further proceedings consistent with the views expressed in this opinion.

Reversed and remanded.

DiVITO and BURKE, JJ., concur.