**STATE of Delaware**

v.

**Donald FLAGG, Defendant.**

No. 9804019233.

Superior Court of Delaware,
New Castle County.

Submitted: March 10, 1999.
Decided: March 17, 1999.

James P. Ropp, and Mark H. Conner, Deputy Attorneys General, Wilmington, Delaware, for the State.

J. Brendan O'Neill, and Kester I.H. Crosse, Wilmington, Delaware, for the Defendant.

## OPINION

BARRON, Judge.

The State has indicted Defendant Donald Flagg for a series of crimes against Anthony and Debra Puglisi and another set of crimes against Karin King. The State has declared its intention to try all the charges together. Defendant Flagg has filed a motion to sever the two sets of charges. This is the Court's decision on severance and on admissibility of the King evidence to rebut Defendant's insanity defense to the Puglisi charges. The Court concludes that the two sets of charges must be severed and that the State may present the evidence of the King incident in rebuttal.

## POSTURE AND FACTS

In May 1998, Defendant Donald Flagg was indicted for a series of crimes against Anthony and Debra Puglisi which occurred between April 20, 1998, and April 24, 1998. The 19–count indictment included two counts of murder, as well as numerous counts of sex, weapons and other offenses. Defendant Flagg has been in the custody of the Department of Corrections since his arrest on April 25, 1998. Trial is scheduled to begin April 6, 1999.

On January 19, 1999, the State reindicted Defendant Flagg for crimes against Karin King that occurred on April 17, 1998, three days before the Puglisi incident started. The reindictment includes six additional charges of burglary and related weapons and sex charges. At an office conference on January 15, 1999, the State declared its intention to try all the charges together. The Court raised the issue of whether the King evidence could be used as rebuttal to the defense of insanity. After discussion, the Court asked the parties to submit legal memoranda on these two issues. The memoranda have been submitted, and the defense has moved for severance, which the State opposes. If severance is granted, the State seeks to offer the King evidence in its rebuttal case. The issues are now ripe for decision.

## DISCUSSION OF JOINDER

■ Under Super. Ct.Crim. R. 8(a)[1], two or more offenses may be joined in the same indictment provided that one of the following circumstances exists: the offenses are of the same or similar character; the offenses are based on the same act or transaction; the offenses are based on two or more connected acts or transactions; or the offenses are based on two or more acts constituting parts of a common scheme or plan.[2] The rule of joinder is designed to promote judicial economy and efficiency, so long as the defendant's rights

1. Super. Ct.Crim. R. 8(a) provides as follows:
   Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

2. *See also Wiest v. State,* Del.Supr., 542 A.2d 1193, 1195 (1988).

are not compromised by the joinder.[3]

Rule 8(a) must be read in conjunction with Super. Ct.Crim. R. 14, which gives the Court discretion to order severance if it appears that either party will be prejudiced by joinder of either offenses or defendants.[4] A motion to sever is addressed to the sound discretion of the trial judge.[5] The defendant bears the burden of showing prejudice sufficient to require severance,[6] and a hypothetical assertion of prejudice is not enough.[7] If a defendant makes unsubstantiated claims of prejudice, the defendant's interests are outweighed by the interest of judicial economy.[8]

### Violation of rule governing joinder.

In the case at bar, the defense argues first that joinder of the Puglisi offenses with the King offenses violates Rule 8(a) because the joinder is inappropriately based on two connecting theories. That is, the murder of Anthony Puglisi and the sexual crimes committed against Debra Puglisi are joined because they constitute "two or more acts or transactions connected together." In contrast, the Puglisi burglary and sex charges are joined to the King charges because they are acts of "the same or similar character." The defense further asserts that there is no theory upon which to base joinder of the Puglisi murder with the King burglary and sex charges.

The State asserts that the two sets of offenses are of a similar nature because both incidents involve Defendant's illegal entry into the home of his intended victim, use of a weapon and similar sexual crimes committed against both women.

Severance is often denied, even in the face of obvious prejudice to the defendant, where the offenses are of the same general nature and give evidence of a common *modus operandi*.[9] In the case at bar, the State rests on this theory for the joinder of the crimes committed against Debra Puglisi and Karin King. On the other hand, in the original indictment, which included only the Puglisi charges, the charges were joined on the theory of a common act or transaction. Defendant correctly argues that if the murder of Anthony Puglisi stood alone (without the sex crimes against Mrs. Puglisi), there would be no basis under Rule 8(a) for joinder with the Karin King charges. Although the Court understands the State's rationale in emphasizing the similarities between the illegal entries and the sex crimes, such analysis minimizes the additional charge of Murder First Degree for the shooting death of Mr. Puglisi. The Court concludes that joinder of the two sets of charges is not appropriate.

### Prejudicial joinder.

At least three forms of prejudice may result from improper joinder: (1) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find;

3. *Mayer v. State*, Del.Supr., 320 A.2d 713 (1974).

4. Super. Ct.Crim. R. 14 provides in pertinent part as follows:
   If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

5. *Younger v. State*, Del.Supr., 496 A.2d 546, 549–50 (1985); *Lampkins v. State*, Del.Supr., 465 A.2d 785 (1983).

6. *Id.*

7. *Bates v. State*, Del.Supr., 386 A.2d 1139 (1978).

8. *Sexton v. State*, Del.Supr., 397 A.2d 540 (1979), overruled on other grounds, *Hughes v. State*, Del.Supr., 437 A.2d 559 (1981).

9. *See, e.g., Howard v. State*, Del.Supr., 704 A.2d 278 (1998); *State v. McKay*, Del.Super., 382 A.2d 260 (1978); *Brown v. State*, Del. Supr., 310 A.2d 870 (1973).

(2) the jury may use the evidence of one of the crimes to infer a general criminal disposition of the defendant in order to find guilt of the other crime or crimes; or (3) the defendant may be subject to embarrassment or confusion in presenting different and separate defenses to different charges.[10]

In the case at bar, Defendant asserts that the joinder will result in all three types of unfair prejudice and that he is entitled to relief pursuant to Rule 14. Specifically, Defendant argues that evidence of the King incident, if introduced in the State's case in chief, will (1) overwhelm the jury with the sheer weight of the evidence; (2) negate a legitimate insanity defense; and, (3) force Defendant Flagg to present inconsistent defenses. The State argues that there is no identifiable prejudice from the joinder.

In regard to overwhelming the jury, the Court notes that the two sets of charges are notably similar in many respects. If identity were an issue in both incidents, severance would unquestionably be appropriate. Here, the State offers a plethora of circumstantial evidence linking Defendant Flagg to both incidents. Where multiple incidents circumstantially point to the perpetrator's identity, severance has been denied because the evidence is of the same type and impact.[11] The Court finds that trying the Puglisi and King charges together does not subject Defendant to prejudice from overwhelming the jury with the weight of evidence.

However, Defendant is at risk for prejudice from other factors. This case is un-usual in that while Defendant acknowledges his role in the Puglisi incident, he denies participation in the King incident. If the two sets of charges are not severed, Defendant will be forced to offer an insanity defense to the Puglisi charges while challenging identity in the King incident. As Defendant argues in his motion, joinder would put him in a "compromising and confusing position."[12] Defendant further maintains that presentation of evidence of the King incident in the State's case-in-chief will eliminate any meaningful consideration of a psychiatric defense to the Puglisi charges.

The Court agrees. If Defendant were forced to present separate and distinct defenses to the two sets of charges, he would be subject to embarrassment and confusion.[13] Recognizing that each severance application is fact-intensive,[14] the Court concludes that, because of the unusual posture of this case, there is a reasonable probability that Defendant would suffer "substantial injustice" if the two sets of charges were not severed. Under these circumstances, the Court may not deny Defendant's motion for severance.[15]

## DISCUSSION OF KING EVIDENCE IN REBUTTAL

Severing the two sets of charges leaves open the question of whether the evidence of the King incident is admissible at Defendant's trial on the Puglisi charges.[16] The State has indicated that, if the two sets of charges are severed, it intends to use the King evidence as rebuttal to Defendant's insanity defense. Dela-

10. *State v. McKay*, 382 A.2d at 262, *quoted in Wiest v. State*, 542 A.2d at 1195.

11. *Howard v. State*, 704 A.2d at 281.

12. Def. Mot. at 7.

13. *State v. McKay*, 382 A.2d at 262.

14. *Howard v. State*, 704 A.2d at 281.

15. *Id.* at 280 (citing *Bates v. State*, 386 A.2d at 1141).

16. *People v. Hayes*, 52 Cal.3d 577, 276 Cal. Rptr. 874, 802 P.2d 376 (1991) (finding that a ruling granting severance does not deprive trial court of authority to determine admissibility of evidence of offenses charged in severed counts). *See also Eakes v. State*, Miss. Supr., 665 So.2d 852 (1995) (had similar charges been severed, evidence of each offense would have been admissible at trials for other offenses).

ware courts have long recognized that when a defendant puts forth an insanity defense, the State in rebuttal may offer evidence that it could not offer in its case in chief.[17]

■ Most recently, in *Magner v. State*,[18] the Delaware Supreme Court affirmed this Court's admission of evidence of a defendant's uncharged misconduct as well as expert opinion testimony to rebut the defendant's claim of extreme emotional distress. The Court reasoned that once the defendant put his state of mind at issue, the bad conduct evidence became relevant and did not run afoul of D.R.E. 404(b) because its purpose was to establish a state of mind, not to show criminal propensity.[19] *Magner* differs from the case at bar in that the evidence in question was uncharged conduct, rather than charged conduct, and Thomas Magner alleged extreme emotional distress, whereas Defendant Flagg pleads insanity. Nevertheless, *Magner* illustrates the general proposition that when a defendant calls his state of mind into question he opens the door to the prosecution's rebuttal evidence, often in the form of prior bad acts, which, under these circumstances, is not subject to a 404(b) analysis.

A factually similar case which illustrates this proposition is *United States v. Johnson*.[20] Defendant Johnson, who was convicted of threatening to kill both the current and a former president, asserted that he was insane when he made the threats and that he had made the threats partly in response to voices compelling him to do so. In other words, Johnson admitted rather than denied the charges against him, just as Flagg admits that he shot Anthony Puglisi and raped Debra Puglisi. Under these circumstances, the Second Circuit Court of Appeals found that there is "no risk of the primary prejudicial effect" of other bad acts evidence, that is, that the jury will prejudge a defendant's guilt on the basis of other criminal activity.[21] For this reason, the *Johnson* court found that the evidence of prior acts of burglary, armed robbery, rape, forcible sodomy, prior escapes from psychiatric hospitals and

17. *See, e.g., State v. Jack*, Ct. Gen. Ses., 58 A. 833 (1903)(State may, on rebuttal, question victim as to conversations with defendant immediately prior to shooting which tended to show that defendant was sane at time of crime).

18. Del.Supr., No. 224, 1997, Walsh, J., 1998 WL 666726 (July 29, 1998) (ORDER).

19. *Id.* (citing *Steedley v. State*, Del.Supr., No. 377, 1991, Walsh, J., 1992 WL 276404 (Sept. 21, 1992) (ORDER)). In the case at bar, as in *Magner*, a *Getz* analysis of the bad conduct evidence is not necessary. However, even under *Getz*, the evidence of Defendant's crimes against Karin King is admissible. First, the evidence of the King charges is material to an issue or ultimate fact in dispute, that is, Defendant's mental state. Such evidence has independent logical relevance in that it tends to make the existence of a disputed, material fact more or less probable. D.R.E. 401. Second, under the inclusionary approach to D.R.E. 404(b), admitting this evidence to rebut the insanity defense is not inconsistent with the basic prohibition against evidence of bad character or criminal disposition. Third, the State asserts that the King evidence will be proved by a DNA match and/or a positive identification by Ms. King, in other words, by evidence which is plain, clear and conclusive. Fourth, the two incidents were only three days apart, and the King incident is therefore not remote in time from the Puglisi incident. Fifth, the probative value of the King evidence is not substantially outweighed by the danger of unfair prejudice. D.R.E. 403. Finally, the jury will be instructed as to the limited purpose for admission of the King evidence. *See Getz v. State*, Del. Supr., 538 A.2d 726, 734 (1988). As to the jury instruction, the Court will so instruct the jury whether *Getz* applies or not. D.R.E. 105.

*See also State v. Hinchey*, 165 Ariz. 432, 799 P.2d 352, 356 (1990) (finding that once defendant raises insanity as a defense, evidence of prior bad acts falls outside of the limitations of Rule 404(b) and that both defendant and the State may present evidence of "previous troubles" to help jury understand defendant's mental condition at the time of the crimes).

20. 14 F.3d 766 (2d. Cir.1994), *cert. denied*, 512 U.S. 1240, 114 S.Ct. 2751, 129 L.Ed.2d 868.

21. *Id.* at 772 (citing *United States v. Bradshaw*, 935 F.2d 295, 302 (D.C.Cir.1991)).

various crimes committed while he was in prison was relevant because it tended to show that he understood the wrongfulness of his actions. Thus, as in *Magner,* the Circuit Court found that the prosecution had properly presented the basis for the opinion of its own expert as well as facts inconsistent with the opinion of the defense experts.[22]

The New York Court of Appeals has phrased the proposition as follows: "[b]y coming forward with sufficient evidence to rebut the presumption of sanity, the defendant in effect injects a new factual issue into the case, and the [prosecution is] consequently required to bear the additional burden of proving the defendant sane beyond a reasonable doubt."[23] In applying this proposition, some courts, such as the Second Circuit in *Johnson,* have allowed in almost any bad acts evidence proffered by the prosecution. If the rebuttal evidence bears some relevance to the defendant's state of mind, it is usually deemed to be admissible. In Arizona, for example, if insanity is an issue, "all prior relevant conduct of the person's life is admissible into evidence."[24] The key word is "relevant," as discussed below.

In the seminal case of *People v. Santarelli,* the Court of Appeals of New York stated that an insanity defense opens the door to evidence of other bad acts "only to the extent that such evidence has a natural tendency to disprove [a] specific claim."[25] The *Santarelli* Court found that certain instances of prior misconduct presented by the prosecution were inadmissible because they were irrelevant and immaterial to the "explosive personality" theory used by the prosecution to rebut defendant's insanity

defense. In so holding, the court specifically rejected the trial court's ruling that "any and all prior conduct" is admissible when a defendant asserts insanity.[26] Because the trial judge failed to evaluate each piece of evidence to determine its relevance and materiality to the prosecution's theory, evidence of irrelevant incidents was admitted at trial. The appellate court explained the danger of admitting "any and all prior misconduct" as follows:

> [I]n insanity cases such as this, the danger is particularly great that the jury will become confused by the mass of evidence presented and will decide to convict the defendant not because they find he was legally sane at the time of the act, but rather because **they are convinced that he is a person of general criminal bent.**[27]

■ Thus, although this is not a 404(b) analysis, the danger is the same—that a defendant will be convicted because the jury is convinced that he must be guilty of something. In assessing the rebuttal evidence of prior misconduct, the Court must reject evidence that has no "articulable relation"[28] to the issue of defendant's sanity at the time of the crimes.

In the case at bar, the State does not seek to present a great mass of other bad acts evidence, as in *Johnson,* but rather, seeks to show that Defendant committed acts against Karin King similar if not identical to those he committed against Debra Puglisi. The King evidence also tends to show that Defendant took similar steps to conceal his actions, showing that he had substantial capacity to understand the wrongfulness of his conduct.[29]

**22.** *Id.*

**23.** *People v. Santarelli,* 49 N.Y.2d 241, 425 N.Y.S.2d 77, 401 N.E.2d 199, 202 (1980).

**24.** *State v. Rodriguez,* 126 Ariz. 28, 612 P.2d 484, 487 (1980).

**25.** *People v. Santarelli,* 425 N.Y.S.2d 77, 401 N.E.2d at 204.

**26.** *Id.,* 425 N.Y.S.2d 77, 401 N.E.2d at 202–03.

**27.** *Id.,* 425 N.Y.S.2d 77, 401 N.E.2d at 205 (emphasis added).

**28.** *Id.*

**29.** *See* 11 *Del. C.* § 401(a).

Other factors may also limit the admissibility of the prior bad acts evidence. In *People v. McMillen*, an Illinois appellate court acknowledged the general rule that when the defendant's insanity is at issue, other events in the defendant's life, such as other crimes or bad acts, become relevant, but found error in the trial court's admission in the prosecution's case-in-chief of the grisly details of a similar but unconnected murder.[30] This admission was error for two reasons. First, its presentation in the prosecution's case-in-chief forced the defendant to introduce evidence of his insanity, and, second, the horrid details of the other murder were so prejudicial as to deprive the defendant of a fair trial even if presented in rebuttal.[31]

In the case at bar, because the State seeks to present the King evidence in its rebuttal case, there is no danger of forcing Defendant to prove his insanity. On the issue of grisly (and therefore prejudicial) details, the State intends to defeat Defendant's insanity defense by presenting evidence of the similarity of the rapes and the manner in which Defendant sought to conceal his actions.

In its written submission dated March 10, 1999, the State identifies the following similarities. In both cases, Defendant surreptitiously entered the victim's home through a back door and, at some point, used a knife to force his victim into compliance. He asked both women for K–Y jelly to facilitate the rapes. He forcibly removed both women's clothing before raping them from behind. While such acts are clearly reprehensible, they are not the sort of grisly details found to be prejudicial in *McMillen*. The Court finds that this evidence has an "articulable rela-

tion"[32] to the question of Defendant's sanity in that it shows that Defendant carried out similar crimes, and, in so doing, took similar steps to conceal his identity and cover his tracks. The furtive manner in which Defendant carried out his plans tends to show that he was well aware of the wrongfulness of his conduct.[33] Thus, this evidence is directly relevant to the State's theory that Defendant Flagg was sane at the time he entered the Puglisi home, murdered Mr. Puglisi, and raped and kidnaped Mrs. Puglisi.

The Court concludes that the evidence of the crimes Defendant allegedly committed against Karin King, as well as any relevant psychiatric evidence, is admissible to rebut Defendant's claim of insanity. The Court will analyze other evidence which the State may wish to offer in rebuttal to the insanity defense pursuant to D.R.E. 401 and D.R.E. 403, as necessary during the course of the trial.

### CONCLUSION

For all the foregoing reasons, Defendant's motion for severance must be and hereby is *Granted*, and the Court further concludes that the evidence of the King incident is admissible in the State's rebuttal case to show that Defendant was sane at the time of the Puglisi incident.

*It Is So ORDERED.*

---

**30.** 281 Ill.App.3d 247, 217 Ill.Dec. 143, 666 N.E.2d 812 (1996).

**31.** *Id.*, 217 Ill.Dec. 143, 666 N.E.2d at 816–17.

**32.** *People v. Santarelli*, 425 N.Y.S.2d 77, 401 N.E.2d at 205.

**33.** *See* 11 *Del. C.* § 401(a).